## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MADER, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, LLC,<br><br>Defendants. | 19-CV-3787 |

## COMPLAINT

Plaintiff brings this action against defendant Experian Information Solutions, LLC ("Experian") for violations of 15 U.S.C. § 1681, known as the Fair Credit Reporting Act ("FCRA") and New York General Business Law § 380, known as the New York Fair Credit Reporting Act ("NY FCRA").

## I.
## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act to ensure the fair and accurate reporting of consumer credit information. Congress enacted this law because of the vital importance of credit information in modern banking and commerce, and imposed significant duties upon those trusted with aggregating and reporting credit information. For the last twelve years, Defendant has violated these duties, and has been failing to update credit reports to reflect that certain student loans were discharged in bankruptcy. Plaintiff brings this action to enforce his rights under law.

## II.
## PARTIES

2. MICHAEL MADER is an individual and a resident of New York.

3. EXPERIAN INFORMATION SOLUTIONS LLC is a business entity existing under the laws of Delaware with its principal place of business in California.

## III.
## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681, as a civil action to enforce liability under federal law.

5. This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367 because the state law claim forms part of the same controversy.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and Defendant is subject to this Court's personal jurisdiction.

## IV.

## STATEMENT OF FACTS

7. Defendant is in the principal business of preparing "consumer reports" as that term is defined in 15 U.S.C. § 1681 (hereinafter, "Credit Reports").

8. The Fair Credit Reporting Act requires Defendant to adopt and employ "reasonable procedures" to ensure these Credit Reports are prepared with the "maximum possible accuracy."

9. When a consumer files for bankruptcy and receives a discharge, Defendant is legally obligated to update that consumer's Credit Report to reflect that any dischargeable debt was discharged in bankruptcy.

10. When a debtor files for bankruptcy and obtains a discharge, all pre-petition debt that is not non-dischargeable is discharged.

11. The Bankruptcy Code makes certain educational loans non-dischargeable in bankruptcy, including federal insured student loans and private education loans that are qualified under the tax code.

12. In order for a private education loan to be qualified under the tax code, it must be made to an eligible student attending an accredited school for eligible expenses ("Qualified Education Loan").

13. Commercial banks make numerous types of student loans that are not Qualified Education Loans under 11 U.S.C. § 523(a)(8)(B), including loans for non-Title IV accredited institutions, loans made in excess of the "Cost of attendance," and loans made to ineligible students ("Consumer Education Loans").

14.     All of these types of student loans are dischargeable in bankruptcy because none of them are made to "eligible institutions" as that term is defined in 26 U.S.C § 221(d) and 11 U.S.C. § 523(a)(8)(B).

15.     In fact, the plain language of the national discharge order states that a discharge does not discharge "*most* student loans." Obviously, *some* student loans are therefore discharged.

16.     Since 1994, bankruptcy and appellate courts across the country have clearly articulated this distinction, and declared that Consumer Education Loans made by commercial banks are dischargeable in bankruptcy, including four bankruptcy courts from the Eastern District of New York since 2016.

17.     Indeed, the Ninth Circuit Bankruptcy Appellate Panel reiterated this position in *Kashikar* in 2017 and held that not all student loans are immune from discharge in bankruptcy.

18.     Recent cases reiterating this distinction have received wide-spread media coverage since 2016, including in the Wall Street Journal, ABC News, Fox News, the National Law Journal, Bloomberg Media, *People* Magazine, National Public Radio, and more.

19.      In addition, major student lenders like Sallie Mae and Navient publicly disclose to shareholders and the SEC that their Consumer Education Loan products are dischargeable in bankruptcy. See attached as **Exhibit A**.

20.     Despite being on full constructive and actual notice of this crucial distinction in bankruptcy law, Defendant does not, and has never had or provided for, an internal procedure to delineate between Qualified Education Loans and Consumer

Education Loans, which is necessary to assuring maximum possible accuracy and complying with the FCRA.

21.     Upon information and belief, Defendant codes all "educational loans" as a no. 9 and no loan coded as a no. 9 is reflected as discharged in bankruptcy after a consumer obtains a discharge under Title 11.

22.     This is not a "reasonable procedure" given the differences between Qualified Education Loans and Consumer Education Loans.

23.     One reasonable procedure that would insure maximum possible accuracy would be to have two different codes for educational loans: "9" for Qualified Education Loans, and "10" for Consumer Education Loans.

24.     To ensure maximum possible accuracy, Defendants could simply ask lenders (who know exactly which loans are Qualified Education Loans and which are Consumer Education Loans) to report educational loans as either a 9 or a 10. Once a discharge was entered, Defendant could program its system so that any loan coded as a 10 reflected a discharge, and loans coded as a 9 reflected that the discharge did not affect the loan.

25.     Plaintiff submits that this procedure would not require individual analysis and would not be overly burdensome.

26.     As stated, Defendant has no such procedure.

27.     Defendant has failed to report these Consumer Education Loans as discharged in bankruptcy for hundreds of thousands of debtors, resulting in erroneously high debt to equity ratios, poor credit scores, and negative remarks suggesting that debtors were in default on debts that had already been discharged.

28. This has prevented consumers from applying for subsequent loans for their various needs and from obtaining affordable home loans/car insurance.

29. Debtors have also been denied employment opportunities, and housing.

30. Given the plain language of the discharge order, the numerous bankruptcy cases articulating this point, the massive media coverage on this issue, and the public statements by credit furnishers, Defendant's failure to adopt reasonable procedures to ensure that these Consumer Education Loans were reported as having been discharged in bankruptcy on consumers' Credit Reports is a violation of the Fair Credit Reporting Act.

31. But for Defendant's failure to adopt such a reasonable procedure to distinguish between Qualified Education Loans and Consumer Education Loans, consumers would have realized a drastic increase in their credit scores in the months and years following their bankruptcy discharge. By not receiving that increase due to the patent flaw in the Defendant's procedures, consumers were not able to enjoy the "fresh start" that they deserved, and needed; the fresh start that the bankruptcy law was created to provide to debtors.

**B.  Plaintiff Borrows A Consumer Education Loans And Seek Relief Under Title 11.**

32. On or about March 21, 2008, Plaintiff incurred a loan from Sallie Mae to attend Reformed Theological Seminary which was subsequently assigned to Navient (the "Navient Loan" or "Loan" or "Debt").

33. This Loan was used to pay expenses while attending Reformed Theological Seminary, which is not and was not a Title IV eligible institution under the Higher Education Act, or 26 U.S.C. 221(d).

34. On or about December 28, 2012, the Plaintiff sought relief under Title 11 in the United States Bankruptcy Court for the Southern District of New York.

35. On or about April 16, 2013, the bankruptcy court ordered discharge of all Plaintiff's pre-petition debt, including the Loan.

36. Navient and Defendant were notified of discharge.

37. Instead of reporting that this Loan had been discharged in bankruptcy, Experian continues to report this Loan as "account charged off" with an outstanding balance of $22,785, and a past due balance of $9,009 as of March 2019.   See attached as **Exhibit B**.

38. Upon information and belief, Navient knows this Loan was discharged in bankruptcy, and Defendant either knows or should have known that this Loan was discharged.

39. Defendant's reporting practices were done in violation of the Fair Credit Reporting Act and the New York Fair Credit Reporting Act.

40. Defendant's reporting practices have injured Plaintiff by decreasing his credit score and depriving him of the "fresh start" that Congress intended he should have.

41. The fundamental purpose of the Bankruptcy Code is to give debtors like the Plaintiff a "fresh start" and to wipe away old debts so that they can begin life anew.

42. This "fresh start" is frustrated when Defendant fails to accurately report the discharge of debts in bankruptcy.

43. But for this unreasonable procedure, Plaintiff would have experienced an increase in credit score, and his credit report would not be showing that he is currently past due on this Debt and that he owes Navient $22,875.

44. Plaintiff's reputation is being injured because everyone who looks at his report believes he is past due on an account when in fact Plaintiff's personal obligation on the account was discharged in bankruptcy.

45. But for Defendant's failure to accurately report the Debt, Plaintiff would have been offered better credit terms by potential and existing creditors.

46. The fact that Plaintiff completed a bankruptcy – a bankruptcy which accurately appears on his credit report – makes it even more important for Plaintiff's credit report to accurately reflect that he has changed his behavior, and no longer is in financial trouble.

47. Defendant's failure to report that this Debt was discharged in bankruptcy, and Defendant's continued reporting that Plaintiff is currently past due and in default on the Debt makes it appear as though Plaintiff continues to be unable to manage his finances.

48. Plaintiff has worked hard to rebuild his life and credit since his bankruptcy.

49. Defendant's inaccurate reporting makes Plaintiff look like just another irresponsible debtor who cannot handle his financial affairs, cannot be trusted with credit and has not learned from his mistakes.

50. Plaintiff's Credit Report has been reviewed by not less than 8 potential creditors in the past two years, all of whom were wrongly informed that Plaintiff is currently in default on the Debt.

C. **All Class Members Share A Similar Narrative.**

51. All Class Members share a similar factual narrative.

52. All Class Members borrowed Consumer Education Loans from various lenders.

53. All Class Members filed for bankruptcy protection in the United States Bankruptcy Court.

54. At the conclusion of these bankruptcy cases, all Class Members were issued discharge orders.

55. These Discharge Orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

56. Notwithstanding the discharge of these debts, Defendants have failed to update the Class Members' Credit Reports to reflect these debts were discharged.

## V.
## CLASS ACTION ALLEGATIONS

57. Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Mader brings this action on behalf of himself and all other persons similarly situated, as a representative of the following class:

58. Citizens of the various states who filed for bankruptcy in any of district courts of the United States and were issued Discharge Orders since October 17, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who: (i) Obtained pre-petition Consumer Education Loans; and (ii) whose Credit Reports do not reflect that the Consumer Education Loans were discharged. Plaintiff also seeks to represent a subclass of residents of the state of New York who are protected by the New York Fair Credit Reporting Act, who obtained pre-petition Consumer Education Loans,

obtained a Discharge Order since October 17, 2005, and whose Credit Reports do not reflect that the Consumer Education Loans were discharged.

59. Plaintiff reserves the right to amend the definition of the class and/or add subclasses to include or exclude members.

60. As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

### **Numerosity**

61. The persons in the class of plaintiffs are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through class action.

62. Upon information and belief, the number of plaintiffs will likely exceed 100,000. The quantity, identity, and location of class members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

63. The Class Members have been through bankruptcy over the last decade. Upon information and belief, the individual members of the class of plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally.

### **Commonality**

64. There are common questions of law/fact affecting the entirety of the class. Specifically, predominant common questions include without limitation: (i) whether the Class Members' Consumer Education Loans were discharged at the conclusion of their

bankruptcy cases; and (ii) whether Defendants' current procedure for ensuring maximum possible accuracy is reasonable.

65. Answers to these common questions will drive the resolution of the injuries shared by each member of the class.

### Typicality

66. Plaintiff's claims against Defendants are representative of those of all Class Members. Specifically, Mader's Navient Loans is one type of Consumer Education Loan that has been wrongfully reported on Plaintiff's Credit Report because of the Defendants' unreasonable procedures.

### Predominance and Superiority

67. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. The questions include, but are not limited to:

(i) whether the Class Members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases; and

(j) whether Defendants' current procedure for ensuring maximum possible accuracy is reasonable.

68. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual members, which would establish incomplete standards of conduct for the parties opposing the Class, as well as a practical matter be dispositive of interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

69. Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the Class as a whole.

70. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

### Adequacy of Representation

71. Mader will fairly and adequately represent and protect the interests of the members of the class of plaintiffs.  Mader's interests are squarely aligned with those of individual members of the class.  Plaintiff's counsel, Smith Law Group LLP is experienced in class actions lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation.

### VI.

### DEMAND FOR JURY TRIAL

72. Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby requests a trial by jury for all issues so triable.

### VII.

### CLAIMS FOR RELIEF

### Count One: Negligent Violations of 15 U.S.C. § 1681e(b)

73. The allegations set forth in paragraphs 1-26 are here incorporated by reference as if fully set forth.

74. Defendants are regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing "consumer reports," as that term is defined in 15 U.S.C. § 1681a(d).

75. Defendants use the means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports, and therefore are "consumer reporting agencies" within the meaning of 15 U.S.C. § 1681a(f).

76. In preparing Credit Reports, Defendant has failed to use reasonable procedures to ensure maximum possibly accuracy of information relating to the discharged Consumer Education Loans of Plaintiff and the Class, in violation of 15 U.S.C. § 1681e(b).

77. As a result of Defendant's failure to use reasonable procedures to ensure accuracy, Defendant has erroneously reported the Loan has having a past due balance, and similarly failed to report the Consumer Education Loans as having been discharged in bankruptcy.

78. Defendants' failure to comply with the requirements of 15 U.S.C. § 1681e(b) is negligent within the meaning of 15 U.S.C. § 1681o(a).

79. As a result of Defendants' negligent noncompliance with the FCRA, plaintiff has been injured, and is entitled to actual damages and attorneys' fees under section 1681o.

**Count Two: Willful Violations of 15 U.S.C. § 1681e(b)**

80. The allegations set forth in paragraphs 1-26 are here incorporated by reference as if fully set forth.

81. Defendants are regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing "consumer reports," as that term is defined in 15 U.S.C. § 1681a(d).

82. Defendants use the means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports, and therefore are "consumer reporting agencies" within the meaning of 15 U.S.C. § 1681a(f).

83. In preparing Credit Reports, Defendant has failed to use reasonable procedures to ensure maximum possibly accuracy of information relating to the discharged Consumer Education Loans of Plaintiff and the Class, in violation of 15 U.S.C. § 1681e(b).

84. As a result of Defendant's failure to use reasonable procedures to ensure accuracy, Defendant has erroneously reported the Loan has having a past due balance, and similarly failed to report the Consumer Education Loans as having been discharged in bankruptcy.

85. Defendants' failure to comply with the requirements of 15 U.S.C. § 1681e(b) is willful within the meaning of 15 U.S.C. § 1681n.

86. As a result of Defendants' willful noncompliance with the FCRA, plaintiff has been injured, and is entitled to actual damages, statutory damages, punitive damages and attorneys' fees under section 1681n.

**Count Three: Negligent Violations of N.Y. General Business Law § 380**

87. The allegations set forth in paragraphs 1-26 are here incorporated by reference as if fully set forth.

88. Plaintiff is a "consumer" as that term is defined in section 380-A.

89. Defendant is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing "consumer reports," as that term is defined in section 380-A

90. Defendant charges fees for assembling and furnishing consumer reports, and therefore is a "consumer reporting agency" and "consumer credit reporting agency" within the meaning of section 380-A.

91. In preparing Credit Reports, Defendant has failed to use reasonable procedures to ensure maximum possibly accuracy of information relating to the discharged Consumer Education Loans of Plaintiff and the Class, in violation of section 380-J

92. As a result of Defendants' failure to use reasonable procedures to ensure accuracy, Defendant has erroneously reported the Loan has having a past due balance, and similarly failed to report the Consumer Education Loans as having been discharged in bankruptcy, for both the Plaintiff, and the putative class.

93. Defendant's failure to comply with the requirements of section 380-J is negligent within the meaning of section 380-M.

94. As a result of Defendant's negligent noncompliance with GBL § 380, plaintiff is entitled to actual damages and attorneys' fees under section 380-M.

**Count Four: Willful Violations of N.Y. General Business Law § 380**

95. The allegations set forth in paragraphs 1-26 are here incorporated by reference as if fully set forth.

96. Plaintiff is a "consumer" as that term is defined in section 380-A.

97. Defendant is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing "consumer reports," as that term is defined in section 380-A

98. Defendant charges fees for assembling and furnishing consumer reports, and therefore is a "consumer reporting agency" and "consumer credit reporting agency" within the meaning of section 380-A.

99. In preparing Credit Reports, Defendant has failed to use reasonable procedures to ensure maximum possibly accuracy of information relating to the discharged Consumer Education Loans of Plaintiff and the Class, in violation of section 380-J

100. As a result of Defendants' failure to use reasonable procedures to ensure accuracy, Defendant has erroneously reported the Loan has having a past due balance, and similarly failed to report the Consumer Education Loans as having been discharged in bankruptcy, for both the Plaintiff, and the putative class.

101. Defendant's failure to comply with the requirements of section 380-J is willful within the meaning of section 380-L.

102. As a result of Defendant's willful noncompliance with GBL § 380, plaintiff is entitled to actual damages, punitive damages and attorneys' fees under section 380-L.

## Prayer

103. In light of the foregoing, Plaintiff request that Defendant be cited to appear and judgment be entered against Defendant for:

**(1)**   Declaratory relief that the practices and procedures complained of by Plaintiff are in violation of the Fair Credit Reporting Act and New York Fair Credit Reporting Act;

**(2)**   actual damages, statutory damages, and punitive damages for violations of Fair Credit Reporting Act and New York Fair Credit Reporting Act;

**(3)**   attorneys' fees and costs to the fullest extent permitted under the law;

**(4)**   other such relief as the Court deems just and proper.

                Respectfully submitted,

By:   /s/ Austin Smith

      Austin Smith, NY Bar. # 5377254
      SMITH LAW GROUP LLP
      3 Mitchell Place
      New York, New York 10017
      Telephone:  (917) 992-2121
      Austin@acsmithlawgroup.com