**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHAEL MADER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-03787-LGS-DCF |
| | ) | |
| EXPERIAN INFORMATION | ) | **ORAL ARGUMENT** |
| SOLUTIONS, LLC, | ) | **REQUESTED** |
| | ) | |
| Defendant(s). | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EXPERIAN'S**
<u>**MOTION TO DISMISS THE COMPLAINT**</u>

JONES DAY
Kerianne Tobitsch
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-8321
Facsimile:  (212) 755-7306
Email: ktobitsch@jonesday.com

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF ALLEGATIONS ........................................................................... 4

STATUTORY FRAMEWORK ................................................................................ 5

    I.      THE FAIR CREDIT REPORTING ACT ...................................................... 5

    II.     CHAPTER 7 OF THE UNITED STATES BANKRUPTCY CODE .................. 6

LEGAL STANDARD .............................................................................................. 8

LEGAL ARGUMENT ............................................................................................. 9

    I.      PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT EXPERIAN
          FAILED TO MAINTAIN REASONABLE PROCEDURES .............................. 9

    II.     PLAINTIFF FAILS TO PLEAD ANY FACTUALLY INACCURATE
          INFORMATION ......................................................................................... 11

          A.     The Requirement of Inaccuracy ............................................... 11

          B.     The FCRA Covers *Factual* Inaccuracies. It Does Not require
                 CRAs to Adjudicate Legal Disputes ........................................ 12

          C.     Even If Experian Was Required To Determine the Validity Of
                 Plaintiff's Debt, Plaintiff Fails To Plead Any Facts That The
                 Bankruptcy Court Discharged His Student Loan Debt ............. 16

    III.    ADDITIONAL REASONS WHY THE WILLFUL VIOLATION
          CLAIMS FAIL AS A MATTER OF LAW ...................................................... 18

          A.     Experian's Alleged Actions, Viewed In Light of Clear Legal
                 Precedent, Were Not, As A Matter Of Law, "Objectively
                 Unreasonable" ........................................................................ 19

          B.     Plaintiff Fails To Plead Facts Establishing That Experian Acted
                 Willfully ................................................................................ 20

    IV.    PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING THAT
          EXPERIAN DID NOT HAVE REASONABLE PROCEDURES .................... 21

    V.     PLAINTIFF FAILS TO PLEAD THAT EXPERIAN FURNISHED A
          CONSUMER REPORT TO A THIRD PARTY CONTAINING THE
          ALLEGEDLY INACCURATE ACCOUNT .................................................. 22

    VI.    PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING THAT HE
          SUFFERED ACTUAL DAMAGES, WHICH DOOMS HIS
          NEGLIGENCE CLAIMS .......................................................................... 24

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 8

*Augustin v. Capital One*,
2015 WL 5657365 (E.D.N.Y. Jul. 27, 2018)............................................... 21

*Barash v. Ford Motor Credit Corp.*,
2007 WL 1791656 (E.D.N.Y. Jun. 20, 2007) ............................................... 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................ 8

*Boothe v. TRW Credit Data*,
768 F. Supp. 434 (S.D.N.Y. 1991)............................................................... 11

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005).......................................................................... 18

*Brunner v. N.Y. State Higher Educ. Svcs.*,
831 F.2d 395 (2d Cir. 1987).................................................................. passim

*Cahlin v. Gen. Motors Acceptance Corp.*,
936 F.2d 1151 (11th Cir. 1991) .................................................................... 11

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) .............................................................. 5, 11, 12

*Casella v. Equifax Credit Info. Svcs.*,
56 F.3d 469 (2d Cir. 1995)...................................................................... 24, 25

*Childress v. Experian Info. Sols., Inc.*,
790 F.3d 745 (7th Cir. 2015) ........................................................................ 13

*Cristobal v. Equifax, Inc.*,
2017 WL 1489274 (N.D. Cal. Apr. 26, 2017) ...................................... 13, 14

*Crump v. Carrington Mortg. Svcs.*,
2019 WL 118490 (N.D. Ill. Jan. 7, 2019) ................................................................ 10

*Darrin v. Bank of Am., N.A.*,
2014 WL 1922819 (E.D. Cal. May 14, 2014) ...................................................... 10, 11

*DeAndrade v. Trans Union LLC*,
523 F.3d 61 (1st Cir. 2008) .......................................................................... 12, 13, 14

*Duncan v. Universal Music Grp. Inc.*,
2012 WL 1965398 (E.D.N.Y. May 31, 2012) ......................................................... 24

*Farkash v. RJM Acquisitions Funding, Inc.*,
2012 WL 2619710 (S.D.N.Y. Jul. 5, 2012) ............................................................. 20

*Fashakin v. Nextel Commc'ns*,
2009 WL 790350 (E.D.N.Y. Mar. 25, 2009) ........................................................... 12

*Frederick v. Capital One Bank, N.A.*,
2015 WL 5521769 (Sept. 17, 2015) ........................................................................ 21

*Frydman v. Experian Info. Sols., Inc.*,
2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016) .............................................. 10, 14, 17

*Gadomski v. Equifax Info. Servs., LLC*,
2018 WL 2096862 (E.D. Cal. May 7, 2018) .............................................................. 9

*Gagasoules v. MBF Leasing LLC*,
2009 WL 10709179 (E.D.N.Y. Feb. 2, 2009) ............................................................ 1

*George v. Chex Systems, Inc.*,
2017 WL 119590 (D. Kan. Jan 12, 2017) ........................................................... 14, 22

*George v. Equifax Mortg. Svcs.*,
2010 WL 3937308 (E.D.N.Y. Oct. 5, 2010) ............................................................ 21

*Gillespie v. Trans Union Corp.*,
482 F.3d 907 (7th Cir. 2007) ................................................................................... 23

*Gorman v. Experian Info. Sols., Inc.*,
2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) ........................................................... 9

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009) ...................................................................... 6

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ...................................................................... 21

*Henson v. CSC Credit Servs.*,
    29 F.3d 280 (7th Cir. 1994) ....................................................... 2, 10, 14, 21

*Humphrey v. Trans Union LLC*,
    2019 WL 125667 (7th Cir. Jan. 8, 2019) .................................................... 13

*Hupfauer v. Citibank, N.A.*,
    2016 WL 4506798 (N.D. Ill. Aug. 19, 2016) ............................. 2, 13, 14, 15

*In re Daymon*,
    490 B.R. 331 (Bankr. N.D. Ill. 2013) .................................................... 7, 15

*In re Grabis*,
    2018 WL 6132045 (Bankr. S.D.N.Y. Nov. 20, 2018) ......................... 7, 8, 16

*In re Jackson*,
    2007 WL 2295585 (Bankr. S.D.N.Y. Aug. 9, 2007) ........................... 3, 6, 20

*In re Kashikar*,
    567 B.R. 160 (9th Cir. 2017) ............................................................ passim

*In re Rodriguez*,
    319 B.R. 894 (Bankr. M.D. Fla. 2005) ......................................................... 7

*Johnson v. Trans Union, LLC*,
    524 Fed. App'x 268 (7th Cir. 2013) ........................................................... 11

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991) ....................................................................... 17

*Levine v. World Fin. Network Nat'l Bank*,
    554 F.3d 1314 (11th Cir. 2008) .............................................................. 3, 19

*Lucchesi v. Experian Info. Sols.*,
    226 F.R.D. 172 (S.D.N.Y. 2005) ................................................................ 23

*Matter of Thomas*,
   931 F.3d 449 (5th Cir. 2019) ...................................................................... 6, 15

*Myrick v. Equifax Info. Svcs., LLC*,
   2017 WL 3324467 (E.D.N.C. Aug. 3, 2017) ............................................ 13, 15

*Ogbon v. Beneficial Credit Servs., Inc.*,
   2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013) ................................................... 10

*Okocha v. Trans Union LLC*,
   2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011) ................................................ 11

*Orozco v. Experian Info. Sols.*,
   2012 WL 2799681 (E.D. Cal. July 9, 2012) .................................................. 12

*Owens v. Textron Fin. Corp.*,
   2014 WL 3887181 (S.D.N.Y. Jul. 14, 2014) .................................................... 8

*Padgett v. Clarity Svcs., Inc.*,
   2018 WL 6628274 (M.D. Fla. Dec. 13, 2018) ................................................ 13

*Perl v. Am. Express*,
   2012 WL 178333 (S.D.N.Y. Jan. 19, 2012) ................................................... 25

*Phillips v. Archstone Simi Valley LLC*,
   740 F. App'x 603 (9th Cir. 2018) ................................................................. 12

*Podell v. Citicorp Diners Club, Inc.*,
   914 F. Supp. 1025 (S.D.N.Y. 1996) ........................................................ 11, 22

*Primrose v. Castle Branch, Inc.*,
   2017 WL 57800 (E.D.N.C. Jan. 3, 2017) ...................................................... 22

*Rapoport v. Asia Elec. Co*,
   88 F. Supp. 2d 179 (S.D.N.Y. 2000) ............................................................. 18

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2006) ........................................................................... 3, 5, 20

*Sarver v. Experian Info. Sols.*,
   390 F.3d 969 (7th Cir. 2004) ............................................................... 2, 9, 10

*Selvam v. Experian Info. Solutions, Inc.*,
2015 WL 1034891 (E.D.N.Y. Mar. 10, 2015) ..................................................... 22, 25

*Shaw v. Experian Info. Sols., Inc.*,
891 F.3d 749 (9th Cir. 2018) ......................................................................... 11, 12, 23

*Smith v. HireRight Sols., Inc.*,
711 F. Supp. 2d 426 (E.D. Pa. 2010) ........................................................................ 19

*Wantz v. Experian Info. Sols.*,
386 F.3d 829 (7th Cir. 2004) .................................................................................... 23

*Wenning v. On-Site Manager, Inc.*,
2016 WL 3538379 (S.D.N.Y. Jun. 22, 2016) ........................................................... 21

*Whelan v. Trans Union Credit Reporting Agency*,
862 F. Supp. 824 (E.D.N.Y. 1994) ....................................................................... 3, 11

*Willey v. J.P. Morgan Chase, N.A.*,
2009 WL 1938987 (S.D.N.Y. Jul. 7, 2018) ......................................................... 20, 24

*Williams-Steele v. Trans Union*,
2015 WL 576714 (S.D.N.Y. Feb. 10, 2015) ............................................................. 23

*Wright v. Experian Info. Sols., Inc.*,
805 F.3d 1232 (10th Cir. 2015) ............................................................... 2, 12, 14, 22

Defendant Experian Information Solutions, Inc. respectfully submits this Memorandum of Law in support of its Motion to Dismiss, with prejudice, the Complaint filed by Michael Mader in the Southern District of New York on April 29, 2019, and served on Experian on June 6, 2019.

## PRELIMINARY STATEMENT

The gravamen of Plaintiff's claims can be summed up as follows:  Because Experian, when it reported Plaintiff's student loan account as "charged off" based upon information that the data furnisher (Navient) provided to Experian, failed to conduct an independent legal analysis to determine whether Plaintiff's student loan debt should have been discharged in bankruptcy, Experian can be held liable under Section 1681e(b) of the Fair Credit Reporting Act (FCRA) and Section 380 of the New York Fair Credit Reporting Act (NYFCRA) for failing to have reasonable procedures to ensure maximum possible accuracy.[1]  For multiple independent reasons, Plaintiff's case is a legal nullity.

First, the FCRA is not a strict liability statute.  Instead, it requires only that Experian use "reasonable procedures" to ensure that the information Experian includes in consumers reports is accurate.  Plaintiff seeks to hold Experian liable simply because Experian reported information it received from one of Plaintiff's creditors (Navient)—information which Plaintiff does not allege he ever disputed with Navient or Experian.  Nor does Plaintiff plead that Navient is an unreliable source.  As courts repeatedly have made clear under virtually identical circumstances, a consumer reporting agency, like Experian—a third party to consumer credit information—cannot be liable

---

[1] The "NYFCRA is [a] consumer protection statute that is styled after the FCRA and courts in the Second Circuit interpret these statutes similarly." *Gagasoules v. MBF Leasing LLC*, 2009 WL 10709179, at *4 (E.D.N.Y. Feb. 2, 2009) (dismissing NYFCRA claims because they are "duplicative of the[] claims under the FCRA and suffer from the same infirmity"); *Barash v. Ford Motor Credit Corp.*, 2007 WL 1791656, at *6 (E.D.N.Y. Jun. 20, 2007) ("the FCRA and the NYFCRA are interpreted similarly and there is no case law specifically applying the state statute in comparable circumstances").

under the FCRA for doing nothing more than reporting information that it receives from a creditor, absent notice from the consumer that the information is inaccurate.  *See*, *e.g.*, *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1241 (10th Cir. 2015).  As a matter of law, all of Plaintiff's claims fail.  *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) ("We found in *Henson* that a consumer reporting agency was not liable, as a matter of law, for reporting information from a judgment docket unless there was prior notice from the consumer that the information might be inaccurate . . . The same could be said for records from financial institutions.").

Second, Plaintiff's claims are not based upon *factually* inaccurate information.  Instead, they depend upon the application of complex *legal* principles from the Unites States Bankruptcy Code.  In recognition of Experian's position as a third party to consumer credit information, courts around the country have held that the FCRA does not require Experian to affirmatively monitor the proceedings of a consumer's bankruptcy—scouring the pleadings, deciphering their legal consequences, and applying those legal consequences to a consumer's credit file—to determine whether a debt should have been legally discharged.  *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016) (dismissing FCRA claims because a third party credit bureau is not required "to determine whether a specific account was discharged in a particular consumer's . . . bankruptcy").  Under the Bankruptcy Code, there is a procedure in place for Plaintiff to seek a legal determination from the *bankruptcy court* regarding whether his student loan debt was discharged.  A review of his bankruptcy docket reveals that Plaintiff *never* sought such a legal determination.  The Discharge Order—which is incorporated by reference into the Complaint—provides that most student loan debt is *not* dischargeable.  Thus, even if the law required Experian to conduct an independent investigation of the credit information that Navient reported to Experian—and it does not—there is nothing in the bankruptcy records for this plaintiff

2

that would have revealed that the student loan debt was discharged.  This leaves Plaintiff without any plausible allegations that Experian reported any *factually* inaccurate information, a necessary element of each of his claims.  *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (accuracy is a complete defense under Section 1681e(b)).

<u>Third</u>, Plaintiff's willful violation claims fail for the same reasons and two additional ones. To begin with, they do not satisfy the strict standard established by the Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2006).  Under *Safeco*, Plaintiff must demonstrate that Experian's interpretation was "objectively unreasonable" in light of guidance from the courts of appeal that might have warned Experian away from the view it took.  *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2008).  Here, relevant case law decided by courts of appeal, including the Second Circuit, makes clear that student debt discharge is *rare*, and that a *court* in the first instance—*not* Experian—must make the legal determination on whether a student debt should be discharged.  *E.g.*, *Brunner v. N.Y. State Higher Educ. Svcs.*, 831 F.2d 395, 396 (2d Cir. 1987) (applying a multi-pronged legal test to determine student debt dischargeability and recognizing "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult"); *In re Kashikar*, 567 B.R. 160, 167-68 (9th Cir. 2017) (same); *see also In re Jackson*, 2007 WL 2295585, at *4-5 (Bankr. S.D.N.Y. Aug. 9, 2007) (It is well-established that "Congress intended that student loans be discharged in rare cases of exceptional circumstance.").  Thus, it was not "objectively unreasonable" for Experian to continue reporting Plaintiff's student debt as non-discharged.  Again, there is nothing in the bankruptcy court's docket showing otherwise, and Experian is not required to make that legal judgment on its own.

Furthermore, if Plaintiff truly believed his student loan debt was discharged, and had documentation establishing the same—*i.e.*, information showing what Navient reported to

Experian was inaccurate—he should have lodged a dispute with Navient in the first instance; and, failing that, provided that documentation to Experian and requested a reinvestigation. Again, Plaintiff *never* disputed the account with Navient or Experian. Thus, the only information that Experian had regarding this account came from Navient, a presumptively reliable source. Thus, Experian's actions were not willful as a matter of law, and this Court should so find.

For all of these reasons, and those set forth below, Experian respectfully requests that the Court dismiss Plaintiff's Complaint, in its entirety, under Rule 12(b)(6).

## SUMMARY OF ALLEGATIONS

On March 21, 2008, Plaintiff obtained a student loan from Sallie Mae to attend theological seminary, and this loan was subsequently assigned to Navient. *See* Compl. at ¶ 32. He petitioned for bankruptcy on December 28, 2012 in the Southern District of New York, and the bankruptcy court issued a Discharge Order on April 16, 2013 to discharge his pre-petition debt. *See* Compl. at ¶¶ 34-35. Although there is a presumption against discharging student debt, *see* Compl. at ¶ 11, Plaintiff contends that he had a certain type of student debt that was dischargeable (what he terms a "Consumer Education Loan") because he obtained the loan to attend an institution that was not eligible under the Higher Education Act. *See* Compl. at ¶¶ 11-14, 33. For this reason, Plaintiff believes that his Navient student loan was discharged pursuant to the Discharge Order. *See* Compl. at ¶ 35. Plaintiff contends that Experian should have updated the Navient account to "discharged in bankruptcy," but instead continued to report the debt as "charged off." *See* Compl. at ¶ 37. Plaintiff never lodged a dispute with Experian over this account so as to enable Experian to conduct a reinvestigation of the debt. Nor does Plaintiff plead that Experian was aware that Navient was an unreliable source of credit information.

Plaintiff commenced this action on behalf of himself and a putative class, alleging that Experian willfully and/or negligently violated Section 1681e(b) of the Fair Credit Reporting Act and Section 380 of the New York Fair Credit Reporting Act.

## STATUTORY FRAMEWORK

## I.     THE FAIR CREDIT REPORTING ACT

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco*, 551 U.S. at 52.  Among other things, the FCRA requires consumer reporting agencies (CRAs), like Experian, to have "reasonable procedures to assure maximum possible accuracy" of information in "consumer reports."  *See* 15 U.S.C. § 1681e(b).  As defined in the FCRA, CRAs are those entities who assemble consumer credit information for the purposes of providing consumer reports to third parties. *See id*. § 1681a(f).  By contrast, "furnishers of information" (sometimes referred to as "data furnishers"), are those entities who "regularly and in the ordinary course of business furnish[] information to one or more consumer reporting agencies" regarding consumers' credit accounts. *See id.* at § 1681s-2(a)(2).  In short, CRAs, like Experian, "simply collect and report information furnished by others."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).

The FCRA contains specific provisions addressing the roles that CRAs, furnishers, and consumers play in monitoring the accuracy of consumer credit information and correcting inaccurate information.  Data furnishers have an affirmative duty to "promptly notify" CRAs if the data furnisher determines that information it has provided is not accurate.  *See id*. § 1681s-2(2). The FCRA also allows consumers to obtain full copies of the information in their credit files so that the consumer can assess the accuracy of the information.  *See id.* § 1681g.  If the consumer finds inaccurate information, the FCRA allows the consumer to dispute credit information directly

with the furnisher of that information who must *investigate* all such claims.  *See id*. at § 1681s-2(a)(8).  By comparison, consumers may also dispute information with the CRAs, who must then conduct a *reinvestigation*.  *See id*. § 1681i(a).  In conducting a reinvestigation, the CRA must notify the furnisher, providing all relevant information about the consumer's dispute.  *See id*. at § 1681i(a)(2).  Upon receipt of this notice, the data furnisher must then conduct an investigation into the dispute and report those results back to the CRA.  *See id*. at § 1681s-2(b).  As the Ninth Circuit has summarized, "the central aspect of the CRA's own investigation" is the notice of dispute it sends to the furnisher, because under the FCRA's statutory scheme, "the CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009).  If a dispute does not resolve the issue for the consumer, the FCRA allows the consumer to place a statement on the account explaining the consumer's position, and this statement must be included with any future consumer report that contains the disputed account.  *See id*. at § 1681i(b)-(c).

## II.    <u>CHAPTER 7 OF THE UNITED STATES BANKRUPTCY CODE</u>

Chapter 7 of Title 11 of the United States Code governs the process of liquidation under the bankruptcy laws of the United States (in contrast, Chapters 11 and 13 govern the process of reorganization of a debtor in bankruptcy).  Under Chapter 7 bankruptcy, student loans are not automatically discharged.  In fact, there is a presumption *against* the dischargeability of loans taken out for educational purposes, which is comprehensive and encompasses "virtually all student loans." *Matter of Thomas*, 931 F.3d 449, 453-54 (5th Cir. 2019) ("Section 523(a)(8) as it stands today excepts virtually all student loans from discharge . . . . Congress's series of amendments clearly evinces an intent to limit bankruptcy's use as a means of offloading student loan debt except in the most compelling circumstances."); *In re Jackson*, 2007 WL 2295585, at *4-5 ("Congress

intended that student loans be discharged in rare cases of exceptional circumstance."); *In re Rodriguez*, 319 B.R. 894, 896-97 (Bankr. M.D. Fla. 2005) (noting that "the types of loans and lenders covered by section 523(a)(8) is meant to be broad" and "consistently . . . more difficult to discharge" after a series of amendments that expand the scope of Section 523(a)(8) to most loans and lenders). Even loans issued by private institutions fall within the presumption against dischargeabilty. *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013).

In order to have student loans considered for discharge, a person must file a complaint to determine dischargeability, which initiates what is known as an adversary proceeding. *See* Fed. R. Bankr. P. 7003; 7001(6) (listing "a proceeding to determine the dischargeability of a debt" as an adversary proceeding governed by the Federal Rules of Bankruptcy Procedure); *In re Kashikar*, 567 B.R. at 162. Here, the bankruptcy court retained jurisdiction for making determinations as to whether a debt is dischargeable under Section 523(a), or any other debts determined to be dischargeable. *See* Discharge Order, at 1 (asserting that "[a]ny judgment not obtained in this court is null and void as to the personal liability of the Debtor(s) regarding . . . debts dischargeable under 11 U.S.C. § 523(a)"). Plaintiff conclusorily asserts that his student loan is the type of student loan that does not fall within Section 523(a)(8), *see* Compl. at ¶¶ 13, 33, but this cannot be known until he seeks a determination from the bankruptcy court in the first instance, which he never did.

Furthermore, the question of whether a particular student loan could fall outside this very broad, all-encompassing presumption against dischargeability is a complex legal analysis. Indeed, the Discharge Order instructs the reader to consult an attorney to determine the effects of the discharge order because "the law is complicated." *See* Discharge Order, at 2. A court first must determine whether the student loan "fall[s] within the scope of section 523(a)(8)(A) or section 523(a)(8)(B)," *In re Grabis*, 2018 WL 6132045 at *3 (Bankr. S.D.N.Y. Nov. 20, 2018), which

requires the bankruptcy court to conduct a multi-pronged legal analysis under each subsection 523(a)(8)(A)(i), (A)(ii), and (B).  *In re Kashikar*, 567 B.R. at 167.[2]  If a loan falls within one of these subsections—as the vast majority of educational loans do—the bankruptcy court must conduct another three-prong test to determine whether the debtor is eligible for an "undue hardship" finding.  *Brunner*, 831 F.2d at 396; *Grabis*, 2018 WL 6132045 at *3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate when a complaint lacks facts to support a "cognizable legal theory." *Owens v. Textron Fin. Corp.*, 2014 WL 3887181, at *4 (S.D.N.Y. Jul. 14, 2014).  When reviewing a motion to dismiss, only factual allegations are accepted as true, not legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court should grant dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679.

---

[2] Plaintiff appears to recognize that this is the first phase of the analysis as to whether a student loan is subject to the broad presumption against dischargeability.  *See* Pl.'s Letter Response in Opp'n to Mot., July 25, 2019, ECF No. 17 at 2 (recognizing that "[t]he first question is whether the "student loan" meets the statutory requirements for non-dischargeability under section 523(a)(8)).  But then Plaintiff appears to assert that the bankruptcy court does not need to go through this first phase of the analysis.  *See id.* at 2 n.1 (stating that "the threshold question of whether a student debt is covered by section 523(a)(8) . . . happens by operation of law").  To the extent that Plaintiff is arguing that no legal analysis is needed to determine whether his student loan falls within the scope of Sections 523(a)(8)(A)(i), (A)(ii), or (B), that is incorrect. *Grabis*, 2018 WL 6132045 at *3.

## LEGAL ARGUMENT

Plaintiff seeks to impose liability on Experian merely for reporting information it received from Navient, despite the fact that Plaintiff never contacted Experian to dispute the information or notify Experian of any potential inaccuracy.  Courts across the country repeatedly have dismissed such claims, which allege only that Experian reported information it received from a presumptively reliable source, like Navient.  The FCRA does not require Experian to scour Plaintiff's bankruptcy docket to adjudicate the legal effects of Plaintiff's discharge order.  As noted, there is a provision in the bankruptcy code to determine dischargeability, which Plaintiff did not follow.  In short, Plaintiff has failed to plausibly allege the existence of inaccurate information in his file that Experian could detect or prevent through the reasonable procedures envisaged in the FCRA. Plaintiff's claim against Experian therefore should be dismissed.

## I.     PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT EXPERIAN FAILED TO MAINTAIN REASONABLE PROCEDURES

In order to state a claim under Section 1681e(b) (and its New York state counterpart), Plaintiff must allege that Experian included inaccurate information in a consumer report as a result of Experian's failure to follow reasonable procedures.  *See*, *e.g.*, *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008).  As a matter of law, "a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a [presumptively reliable source], absent prior notice . . . that the information may be inaccurate." *Gadomski v. Equifax Info. Servs., LLC*, 2018 WL 2096862, at *4 (E.D. Cal. May 7, 2018) (dismissing Section 1681e(b) claim where CRA obtained information from financial institution) (quoting *Wright*, 805 F.3d at 1241) (brackets in original); *Sarver*, 390 F.3d at 972 ("[A] consumer reporting agency was not liable, as a matter of law, for reporting information from a judgment docket unless there was prior notice from the consumer that the information might be inaccurate.")

(citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994)).  In *Sarver*, the Seventh

Circuit expanded upon its decision in *Henson*, applying it to information that a consumer reporting

agency receives from a financial institution, like Navient:

> In the absence of notice of prevalent unreliable information from a
> reporting lender, which would put Experian on notice that problems
> exist, we cannot find that such a requirement to investigate [prior to
> receiving a consumer dispute] would be reasonable given the
> enormous volume of information Experian processes daily.

*Sarver*, 390 F.3d at 972-73.  *Sarver* thus holds that, as a matter of law, "[i]n the absence of notice

of prevalent unreliable information from a reporting lender," Section 1681e(b) did not prohibit the

consumer reporting agency from reporting a debt based solely upon information obtained from the

creditor before receiving notice that the plaintiff disputed the debt.  *Frydman v. Experian Info.

Sols., Inc.*, 2016 WL 11483839, at \*12-13 (S.D.N.Y. Aug. 11, 2016) (same; following *Sarver*:

"Courts have consistently held, however, that a CRA does not violate its duty to assure reasonable

accuracy pursuant to Section 1681e(b) simply by reporting an inaccurate debt or judgment, absent

prior reason to believe that its source was unreliable."); *Ogbon v. Beneficial Credit Servs., Inc.*,

2013 WL 1430467, at \*7 (S.D.N.Y. Apr. 8, 2013) (same; following *Sarver*); *Crump v. Carrington

Mortg. Svcs.*, 2019 WL 118490, at \*6 (N.D. Ill. Jan. 7, 2019) (following *Sarver*, and holding that

"prior to receiving [plaintiff's] dispute letter, Experian did not violate § 1681e(b) by relying on the

information that [the furnisher] reported[.]"); *Darrin v. Bank of Am., N.A.*, 2014 WL 1922819, at

\*7 (E.D. Cal. May 14, 2014) (denying motion to reconsider dismissal of Section 1681e(b) claim

where CRA relied on information obtained from financial institution).

Here, Plaintiff alleges that Experian reported the exact information Navient, Plaintiff's loan

servicer, provided to Experian.  *See* Compl. ¶ 37-38.  In other words, Plaintiff's allegations amount

to a claim that Experian was doing exactly what CRAs do: "[C]ollect and report information

furnished by others." *Carvalho*, 629 F.3d at 891.  Yet, Plaintiff does not allege that Navient is an unreliable source of credit information, let alone that Experian knew or should have known that fact.  Nor does Plaintiff allege that he ever took advantage of the FCRA's dispute mechanisms to notify Experian of the allegedly inaccurate information.  Under these circumstances, Experian's reliance on Navient as a source was presumptively reasonable as a matter of law.  *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997) (a CRA is "entitled to report [inaccurate debt], at least until it heard from [the] plaintiff directly"); *Darrin*, 2014 WL 1922819 at *7 (same).  For this reason, all of Plaintiff's claims fail.

## II.   PLAINTIFF FAILS TO PLEAD ANY FACTUALLY INACCURATE INFORMATION

### A.   The Requirement of Inaccuracy

At the heart of all FCRA claims complaining of erroneous credit reporting is the element of inaccuracy.  "[T]o sustain [] a § 1681e [] claim, a consumer must first make a 'prima facie showing of inaccurate reporting' by the CRA."  *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Carvalho*, 629 F.3d at 890); *Whelan*, 862 F. Supp. at 829 (under Section 1681e(b), "the 'threshold question' is whether the challenged credit information is inaccurate; if the information is accurate, 'no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary.'"); *Johnson v. Trans Union, LLC*, 524 Fed. App'x 268, 270 (7th Cir. 2013) (holding that there be "something in his credit report [that] was inaccurate . . . to show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b)"); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (stating that liability under Section 1681e(b) requires "that a credit reporting agency prepared a report containing 'inaccurate' information"); *Okocha v. Trans Union LLC*, 2011 WL 2837594, at *5 (E.D.N.Y. Mar. 31, 2011), *aff'd*, 488 F. App'x 535 (2d Cir. 2012) (§ 1681e(b)); *Boothe v. TRW*

*Credit Data*, 768 F. Supp. 434, 437–38 (S.D.N.Y. 1991) (§§ 1681e(b) and 1681i); *see also Fashakin v. Nextel Commc'ns*, 2009 WL 790350, at *11 (E.D.N.Y. Mar. 25, 2009); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (collecting cases that require a showing of inaccuracy to state a claim).  Without a plausible allegation that Experian prepared a consumer report containing inaccurate information, claims under Section 1681e(b) must be dismissed.  *See, e.g.*, *Orozco v. Experian Info. Sols.*, 2012 WL 2799681, at *5 (E.D. Cal. July 9, 2012) (dismissing claims under Section 1681e(b) where plaintiff merely recited elements of cause of action); *see also Carvalho*, 629 F.3d at 890 (upholding summary judgment for Experian where Plaintiff failed to show the existence of inaccurate information); *Shaw*, 891 F.3d at 756 (same).

**B.**     **The FCRA Only Covers *Factual* Inaccuracies.  It Does Not Require CRAs To Adjudicate Legal Disputes.**

A litany of cases provide that the FCRA's requirement that a CRA report accurate credit information does not extend to "inaccuracies" that are essentially legal disputes between a consumer and his creditor about the proper way to report a debt.  *See, e.g.*, *Carvalho*, 629 F.3d at 892 ("reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts"); *Phillips v. Archstone Simi Valley LLC*, 740 F. App'x 603, 604 (9th Cir. 2018) (inclusion of allegedly unpaid rent on a consumer report was a claim "that concerned the legal validity of the alleged debt and therefore did not constitute inaccurate information for the purposes of the FCRA."); *DeAndrade*, 523 F.3d at 68 (holding that determining the validity of a mortgage loan "is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA"); *Wright*, 805 F.3d at 1242 (holding that the FCRA did not require the CRAs to determine the validity of tax liens because "[a] reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report" nor

12

does it require "CRAs to employ individuals trained in American . . . law"); *Humphrey v. Trans Union LLC*, 2019 WL 125667 (7th Cir. Jan. 8, 2019) (adopting *DeAndrade* and upholding dismissal of FCRA claims where the plaintiff alleged he was not liable for payments on student loan debt due to a disability discharge); *Padgett v. Clarity Svcs., Inc.*, 2018 WL 6628274, at *3 (M.D. Fla. Dec. 13, 2018) (collecting cases and stating "multiple circuit courts have held that the FCRA does not require a CRA . . . to adjudicate disputed debts").

The reasoning in these decisions makes particular sense in FCRA cases arising out of consumer bankruptcies, where courts roundly have rejected claims that a consumer reporting agency was required to determine which debts are included in the consumer's discharge order or scour a consumer's bankruptcy docket to adjudicate other legal effects of the order. *See*, *e.g.*, *Cristobal v. Equifax, Inc.*, 2017 WL 1489274, at *3 n. 4 (N.D. Cal. Apr. 26, 2017) ("The Court similarly agrees that Equifax is not capable or required to "'resolv[e] a legal dispute between Plaintiff and her creditors' about the confirmation plan's effect on the legal status of her debt. The law does not require the CRAs to act as a tribunal or 'scour' a bankruptcy file and make judgments about which debts are included.") (citation omitted); *Hupfauer,* 2016 WL 4506798, at *7 (dismissing FCRA claims based on allegations that debt was discharged in Chapter 13 bankruptcy and that "requiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party."); *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (holding that there was no duty to employ legally trained individuals to review and classify bankruptcy dismissals); *Myrick v. Equifax Info. Svcs., LLC*, 2017 WL 3324467, at *4 (E.D.N.C. Aug. 3, 2017) (holding that a CRA is not liable under Section 1681e(b) when "it was unaware that the [] account was discharged by the bankruptcy court because the information it received about

13

the discharge did not specify whether the [account] . . . was included in the Chapter discharge); *George v. Chex Systems, Inc.*, 2017 WL 119590, at *3 n.2 (D. Kan. Jan 12, 2017) (holding that "the maximum possible accuracy" standard of § 1681e does not require a CRA to check a judicial docket prior to preparing a report, particularly where, as here, "the plaintiff did not first contact the CRA to challenge" the disputed information); *Frydman*, 2016 WL 11483839, at *13 ("Courts similarly have rejected the contention that CRAs are required to conduct manual reviews of all the items that they receive before including them in a consumer's credit file."); *Henson*, 29 F.3d at 285-86 ("Requiring [CRAs] to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient."); *Wright*, 805 F.3d at 1241 (CRAs are not required to "employ individuals trained in American tax law" before reporting tax liens).

Here, the foundation of Plaintiff's claims is not a *factual* dispute.  Instead, the gravamen of this case is that Experian is inaccurately reporting the legal effects of Plaintiff's bankruptcy as applied to his student loan with Navient.  *See* Compl. at ¶¶ 35, 37.  But as the Second Circuit has explained, the dischargeability of student debt is a *question of law*.  *Brunner*, 831 F.2d at 396. And, under the Bankruptcy Code, it is a legal question that the bankruptcy court must answer in the first instance.  *See* Fed. R. Bankr. P. 7003; 7001(6).  Indeed, this is the exact type of legal dispute that Experian is not required—or even suited—to resolve because credit reporting agencies are "neither qualified nor obligated to answer" the question of "whether a specific account was discharged in a particular consumer's . . . bankruptcy."  *Hupfauer*, 2016 WL 4506798, at *7; *Cristobal*, 2017 WL 1489274 at *3 n.4 ("The Court similarly agrees that Equifax is not capable or required to 'resolv[e] a legal dispute between Plaintiff and her creditors'" about a bankruptcy proceeding's effect on the legal status of her debt); *see also DeAndrade*, 523 F.3d at 68 ("This is

not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA.").

Determining whether the Navient loan was discharged is a complex legal question best left to attorneys and courts, as the bankruptcy court's own order recognizes by advising the reader to consult an attorney. *See* Discharge Order, at 2 (instructing the reader to consult an attorney to determine the effects of the discharge order because "the law is complicated"); *Myrick*, 2017 WL 3324467, at *4 ("Given the advisory language in the bankruptcy court's discharge order noting that legal assistance may be necessary to determine the effect of the discharge, the court finds that the circumstances presented in this case would have imposed a similar burden on Equifax."); *Hupfauer*, 2016 WL 4506798, at *7 ("determin[ing] whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy . . . is precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer.").

A review of relevant principles of bankruptcy law as applied to student debt does little to solve the problem. As noted, there is a presumption *against* the dischargeability of loans taken out for educational purposes, and this presumption is both comprehensive and encompasses "virtually all student loans." *Matter of Thomas*, 931 F.3d at 453-54. Again, even loans issued by private institutions fall within the presumption against dischargeabilty. *Daymon*, 490 B.R. at 336 ("By amending § 523(a)(8), Congress intended to broaden the scope of nondischargeable debts under that section to recognize an important role played by private institutions in providing educational funding for students.").

The question of whether a particular student loan could fall outside this very broad, all-encompassing presumption against dischargeability is itself a complex legal analysis, contrary to Plaintiff's assertion that there is a clear cut test (Compl. at ¶¶ 17, 20). To begin with, the

determination regarding dischargeability is to be made by a Court—not Experian—through an adversary proceeding.  *See* Fed. R. Bankr. P. 7003; 7001(6); *Kashikar*, 567 B.R. at 162.  In the first part of that legal proceeding, a court must determine whether the student loan "fall[s] within the scope of section 523(a)(8)(A) or section 523(a)(8)(B)," *Grabis*, 2018 WL 6132045 at *3, which requires the bankruptcy court to conduct a multi-pronged legal analysis under each subsection 523(a)(8)(A)(i), (A)(ii), and (B).  *Kashikar*, 567 B.R. at 167.  If a loan falls within one of these subsections—as the vast majority of educational loans do—the bankruptcy court must conduct another three-prong test to determine whether the debtor is eligible for an "undue hardship" finding.  *Brunner*, 831 F.2d at 396.  Whether Plaintiff is correct that his Navient loan would be discharged upon completion of an adversarial proceeding is not for Experian to say because Experian is not required to make, or even capable of making, this legal determination.

In short, there is no simple "fact of the matter" as to the dischargeability of Plaintiff's student loan.  Crucially, the bankruptcy court's own order is wholly silent on the question. Plaintiff could have—but did not—seek an adjudication from the bankruptcy court on this legal question.  And, as court-after-court has held, it is not Experian's role under the FCRA to step into the shoes of the bankruptcy court to make this legal adjudication.  Thus, Plaintiff's claims against Experian should be dismissed because there is no actionable inaccurate information alleged in Plaintiff's complaint.  Instead, the alleged "inaccuracy" is nothing more than a legal dispute between Plaintiff and Navient regarding the legal effects of the Discharge Order.

C.     **Even If Experian Was Required To Determine The Validity Of Plaintiff's Debt, Plaintiff Fails To Plead Any Facts That The Bankruptcy Court Discharged His Student Loan Debt**

Even if Experian was required to scour the bankruptcy court records to determine whether the information that Navient reported was inaccurate—and, as demonstrated, the FCRA does not

impose such a requirement upon Experian (*see*, *e.g.*, *Frydman*, 2016 WL 11483839, at *13 ("Courts similarly have rejected the contention that CRAs are required to conduct manual reviews of all the items that they receive before including them in a consumer's credit file")—Plaintiff does not plead any facts to support his conclusory assertion that Experian would have been able to determine that his student loan debt was discharged.

To begin with, the documents incorporated by reference into the Complaint do not address the dischargeability of his student loan.[3]   The Discharge Order merely states that "Debtor is released from all *dischargeable* debts," but does not state whether Plaintiff's student debt was discharged; instead, the Discharge Order explains to the reader that most student loan debt is *not* dischargeable.  *See* Declaration of Richard Grabowski ("Grabowski Decl."), Exhibit C, Order of Final Decree & Discharge at 1-2, 1:12-BK-15028, (Bankr. S.D.N.Y. Apr. 16, 2013), ECF No. 8 (stating that "[s]ome of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are: . . . . [d]ebts for most student loans") (emphasis in original).

Nor does the bankruptcy petition contain any information about whether Plaintiff had a type of student loan that could fall outside the presumption against dischargeability. The bankruptcy petition only contains a generic statement that Plaintiff had a "2008 Student Loan" for $70,500 with Sallie Mae.  *See* Grabowski Decl., Exhibit B, Voluntary Petition at 19, 1:12-BK-15028, ECF No. 1.  Notably, Plaintiff did not describe the loan as a consumer loan, but instead described it as a "student loan," which necessitates the legal analysis described above to determine whether it is the type of student loan that falls within Section 523(a)(8)'s broad presumption against dischargeability.   Plaintiff argues that the term "student loan" is "simply a common expression to refer to debt incurred by a student."  *See* Pl.'s Letter Resp., ECF No. 17, at 2.

---

[3] This Court may take judicial notice of Plaintiff's bankruptcy docket.  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

Plaintiff's argument misses the larger point that his bankruptcy petition contained no signal as to what type of student loan he had, and Plaintiff ignores that the question of what type of debt incurred for educational purposes is a student loan within the meaning of Section 523(a)(8)'s presumption against dischargeability is itself a legal analysis. As explained above, the bankruptcy court—not Experian—is the appropriate body to make that determination. Thus, had Experian conducted an examination of the bankruptcy court records, there is no information available in the bankruptcy proceedings to support Plaintiff's contention that his self-described "student loan" was really a generic consumer loan not subject to the presumption against dischargeability of student debt.[4]

In sum, Plaintiff's claims fail as a matter of law because the documents incorporated by reference into the Complaint demonstrate that his bankruptcy docket contains no information that his student loan was discharged in bankruptcy. Thus, Plaintiff would not be able to re-plead his claims with factual support of an inaccuracy.

## III.    ADDITIONAL REASONS WHY THE WILLFUL VIOLATION CLAIMS FAIL AS A MATTER OF LAW

The Court should dismiss Plaintiff's willful violation claims for two additional reasons. First, Experian did not act in a manner that was "objectively unreasonable." Second, Plaintiff did

---

[4] When a complaint contradicts or mischaracterizes an incorporated document, a court may look to the terms of the document and need not accept the allegations in the complaint as true. *Rapoport v. Asia Elec. Co*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("If [incorporated] documents contradict the allegations of the amended complaint, the documents control and this Court need not accept as true the allegations in the amended complaint."); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (if a "complaint relies on the terms of [a document]," the court "need not accept its description of those terms, but may look to the [document] itself."). Here, the fact that the Discharge Order does not state whether Plaintiff's student debt was included in the discharge, and instead states that student debt is generally ***not*** dischargeable, combined with the fact that Plaintiff characterized his debt as a "student loan" in his bankruptcy petition, demonstrates that Plaintiff fails to plead that there was any information available in these incorporated documents establishing that his student loan was in fact discharged, and thus the complaint should be dismissed. *See Rapoport*, 88 F. Supp. 2d at 184 (dismissing claim where the facts relied upon in the complaint were refuted by incorporated documents).

not plead facts establishing that Experian acted with the requisite state of mind.  Each of these grounds is discussed more fully below.

### A.   Experian's Alleged Actions, Viewed In Light Of Clear Legal Precedent, Were Not, As A Matter Of Law, "Objectively Unreasonable"

To prevail on a claim for willful violation of the FCRA, a plaintiff must demonstrate that a consumer reporting agency "either knowingly or recklessly violated the requirements of the Act." *Levine*, 554 F.3d at 1318 (citing *Safeco*, 551 U.S. at 70).  A consumer reporting agency recklessly violates the FCRA when its actions are "not only a violation under a reasonable reading of the statute's terms, but [the plaintiff] shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. (quoting *Safeco*, 551 U.S. at 69).  "Thus, even if a consumer reporting agency engages in an erroneous reading of the [law], it is not reckless unless [the reading] was objectively unreasonable." *Smith v. HireRight Sols., Inc*., 711 F. Supp. 2d 426, 434 (E.D. Pa. 2010) (citing *Safeco*).  To prove a reckless violation, a plaintiff must show that the defendant's interpretation was "'objectively unreasonable' under either the text of the Act or 'guidance from the courts of appeals . . . that might have warned [the agency] away from the view it took.'" *Levine*, 554 F.3d at 1318 (quoting *Safeco*, 551 U.S. at 68-69).

Experian's reporting of Plaintiff's student loan as not discharged in bankruptcy was consistent with relevant case law decided by courts of appeal, including the Second Circuit in *Brunner*, addressing the rarity of student debt discharge and the need for a judicial determination when circumstances exist for it to be discharged. *E.g.*, *Brunner*, 831 F.2d at 396 (applying a multi-pronged legal test to determine student debt dischargeability and recognizing "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt.").  It is well-established that "Congress intended that

student loans be discharged in rare cases of exceptional circumstance," *Jackson*, 2007 WL 2295585, at *4-5, and the bankruptcy court—not Experian—must make the legal determination as to whether a student debt is discharged. *Kashikar*, 567 B.R. at 167-68. As a result, Plaintiff has failed to allege that reporting Plaintiff's student debt as not discharged in bankruptcy was a reckless and "objectively unreasonable" violation of the FCRA.

Plaintiff's failure to plead willfulness means that his claim for punitive damages and statutory damages must be dismissed. *See* 15 U.S.C. § 1681o; *Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987, at *2 (S.D.N.Y. Jul. 7, 2018).

### B.     Plaintiff Fails To Plead Facts Establishing That Experian Acted Willfully

Plaintiff also fails to plead facts establishing that Experian acted willfully. To adequately plead willfulness under the FCRA, a plaintiff must allege facts showing that a consumer reporting agency either acted with the knowledge that its conduct was unlawful or in spite of an "unjustifiably high risk" of violating the law. *Safeco*, 551 U.S. at 56-57.

Plaintiff did not plead any facts clearing the high bar for willful conduct under the FCRA that the Supreme Court in *Safeco* has set. Plaintiff fails to allege facts that Experian was aware, or had reason to believe, that there was an inaccuracy in Plaintiff's credit file because, as discussed above, Plaintiff did not plead that there were any indicators in the bankruptcy docket that Plaintiff's student debt was discharged. To the contrary, the only guidance on this issue in the Discharge Order instructed that most student debts are not discharged and advised the reader to consult a lawyer, further underscoring that the question of whether a particular student debt is discharged is a legal matter to be decided by a court. Even if there had been an error in Plaintiff's file—which Plaintiff has failed to plead—a mistake, unintentional conduct, or negligence is not enough to plead willfulness. *Farkash v. RJM Acquisitions Funding, Inc.*, 2012 WL 2619710, at *3 (S.D.N.Y. Jul.

5, 2012).   In short, Plaintiff does not plead any facts to demonstrate that Experian acted with knowledge or intent to mislead or violate the law, *see George v. Equifax Mortg. Svcs.*, 2010 WL 3937308, at *3 (E.D.N.Y. Oct. 5, 2010), or any allegations that "would render it facially plausible that [Experian's] conduct was the product of willfulness or reckless disregard, rather than the product of mistake." *Augustin v. Capital One*, 2015 WL 5657365, at *6 (E.D.N.Y. Jul. 27, 2018).

## IV.   PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING THAT EXPERIAN DID NOT HAVE REASONABLE PROCEDURES

Plaintiff's claims fail for an additional reason:   Plaintiff does not plead facts establishing that Experian lacked reasonable procedures.   Again, as noted, the FCRA does not require consumer reporting agencies to maintain error-free credit reports.   *Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, at *16 (S.D.N.Y. Jun. 22, 2016) ("The FCRA does not provide for strict liability for a CRA that reports inaccurate information.   Rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report."); *Frederick v. Capital One Bank, N.A.*, 2015 WL 5521769, at *7 (Sept. 17, 2015) ("even if some information in a consumer credit report is inaccurate, a credit reporting agency is not held strictly liable under the FCRA merely for reporting it"); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA does not impose strict liability . . . an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures.").   Instead, the FCRA requires consumer reporting agencies, like Experian, to maintain reasonable procedures to assure the maximum possible accuracy of information contained in consumer reports.   15 U.S.C. § 1681e(b).

As a matter of law, Experian is not liable under Section 1681e(b) for reporting inaccurate information obtained from a court docket, a "presumably reliable source" of information, absent prior notice from the consumer that the information may be inaccurate.   *Henson*, 29 F.3d at 285;

*Wright*, 805 F.3d at 1241 (holding that a CRA may rely on information obtained from a court docket, absent prior notice, because "[t]o hold otherwise would require CRAs 'to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action'"); *Primrose v. Castle Branch, Inc.*, 2017 WL 57800, at *7 (E.D.N.C. Jan. 3, 2017) (holding that Section 1681e(b) "requires a CRA to follow reasonable procedures, not infallible procedures, and a CRA may reasonably rely on a court's electronic database"); *George*, 2017 WL 119590, at *3 n.2 (holding that a CRA is not required to adopt a procedure to check a bankruptcy docket "where the plaintiff did not first contact the CRA to challenge" the disputed information); *Podell*, 914 F. Supp. at 1036 (a CRA is "entitled to report [inaccurate debt], at least until it heard from [the] plaintiff directly");

As noted above, the incorporated bankruptcy documents do not address the dischargeability of Plaintiff's student loan, and the Complaint does not allege that Plaintiff notified Experian of a potential inaccuracy in the bankruptcy docket.[5]  Because Plaintiff failed "to allege [facts] that Defendant Experian did not act reasonably to assure the accuracy of [his] credit report," his Section 1681e(b) claim must be dismissed.  *Selvam v. Experian Info. Solutions, Inc.*, 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) (dismissing Section 1681e(b) claim because, like Plaintiff does here, the plaintiff merely made conclusory statements regarding Experian's failure to follow reasonable procedures).

## V.   PLAINTIFF FAILS TO ADEQUATELY PLEAD THAT EXPERIAN FURNISHED A CONSUMER REPORT TO A THIRD PARTY CONTAINING THE ALLEGEDLY INACCURATE ACCOUNT

Plaintiff alleges a violation of Section 1681e(b), which provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to

---

[5] Plaintiff only alleges that Navient and Experian received notice of the Discharge Order.  *See* Compl. at ¶ 36.

assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  The term "consumer report" is statutorily defined to mean "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."  *See* 15 U.S.C. § 1681a(d)(1).

By definition, to constitute a "consumer report," there must be a "communication of [] information by a consumer reporting agency" to a third party to establish a consumer's eligibility for credit, insurance, employment, or any other qualifying purpose under the statute.  *Id*.; *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004) ("There is no consumer report unless there is a 'communication ... for the purpose of serving as a factor in establishing the consumer's eligibility for' credit or other statutorily enumerated purposes[.]"), *abrogated on other grounds by Safeco*, 551 U.S. 47 (2007); *Shaw*, 891 F.3d at 756 n.7 ("A consumer, or credit, report is a CRA-prepared report that a CRA *issues to third parties* for certain qualifying purposes.") (emphasis added)); *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007)); *Williams-Steele v. Trans Union*, 2015 WL 576714, at *2 (S.D.N.Y. Feb. 10, 2015) (same); *Lucchesi v. Experian Info. Sols.*, 226 F.R.D. 172, 174 (S.D.N.Y. 2005) (stating that a report "cannot form the basis of liability under the FCRA" if it was not issued for a qualifying purpose under Section 1681a(d)(1)).

Although Plaintiff pleads, in conclusory fashion, that there were "potential creditors" who "reviewed" his credit report, *see* Compl. ¶ at 50, this threadbare allegation falls well short of

establishing that Experian furnished a consumer report to a third party containing the allegedly inaccurate Navient account for a qualifying purpose. "A complaint does not suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Duncan v. Universal Music Grp. Inc.*, 2012 WL 1965398, at *2 (E.D.N.Y. May 31, 2012) (internal quotation marks omitted). The Complaint fails to allege any facts identifying any third party who may have received Plaintiff's consumer report, or any credit, insurance, or employment opportunity affected by any consumer report. Thus, Plaintiff's Section 1681e(b) claim fails for this additional reason.

## VI. PLAINTIFF FAILS TO PLEAD FACTS ESTABLISHING THAT HE SUFFERED ACTUAL DAMAGES, WHICH DOOMS HIS NEGLIGENCE CLAIMS

Absent proof of actual damages caused by Experian's alleged violations of the FCRA and NYFCRA, Plaintiff's negligent violation claims must be dismissed. *Willey*, 2009 WL 1938987 at *2. Plaintiff has not pleaded facts sufficient to establish that he suffered from actual damages proximately caused by Experian's reporting of his Navient account as non-discharged.

To begin with, Plaintiff does not allege that he was denied any credit, insurance, or employment opportunity. Indeed, as has been demonstrated, Plaintiff does not even allege that a potential creditor (or any third party) ever obtained a consumer report containing the allegedly inaccurate Navient account. Instead, Plaintiff claims that a low credit score caused him harm. *See* Compl. ¶¶ at 43, 45. Precisely how the Navient account caused him harm, rather than the fact that he had a Chapter 7 bankruptcy on file, Plaintiff does not say. Regardless, it is insufficient to establish the required element of actual damages. The existence of negative credit information, by itself, cannot establish damages in the absence of a specific lost credit opportunity or evidence that a third party received the consumer's credit report. *See Casella v. Equifax Credit Info. Svcs.*, 56 F.3d 469, 476 (2d Cir. 1995). Courts repeatedly have made clear that a bare assertion of a decline in credit score is insufficient to support an FCRA claim without factual allegations that the decline

caused a plaintiff to be denied credit, insurance, or employment. *Perl v. Am. Express*, 2012 WL 178333, at *4 (S.D.N.Y. Jan. 19, 2012) (dismissing FCRA claim where plaintiff failed to plead facts that a reduction in credit score caused actual injury to the plaintiff); *see also Casella*, 56 F.3d at 476. But again, Plaintiff does not plead that Experian furnished a consumer report to a third party containing the allegedly inaccurate Navient account, or that a negative decision was made based on that report. Because Plaintiff has not adequately pleaded that he suffered any actual damages, his negligence claims against Experian fail.

## CONCLUSION

In lieu of initiating an adversary proceeding to have the bankruptcy court adjudicate the dischargeability of his student loan debt, Plaintiff filed a putative class action against Experian, contending, in effect, that consumer reporting agencies, before reporting student loan debts from consumers coming out of bankruptcy, must step into the role of the bankruptcy court and adjudicate whether that debt was discharged—even where, as here: (1) the consumer did not lodge a dispute over the reporting of the debt, and (2) there is no allegation that the furnisher of the information was an unreliable source. There is no basis in the FCRA or its New York state counterpart for such a requirement. Indeed, virtually identical claims have been roundly rejected by courts across the country for decades. This Court should follow suit, and dismiss this action with prejudice.

Dated: August 29, 2019

Respectfully submitted,

*/s/ Kerianne Tobitsch*
Kerianne Tobitsch
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-8321
Email: ktobitsch@jonesday.com

*Attorneys for Experian Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kerianne Tobitsch, certify that on August 29, 2019, I caused the foregoing to be served upon all counsel of record.

<u>/s/ Kerianne Tobitsch</u>
Kerianne Tobitsch

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*