## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHAEL MADER,

        Plaintiff,

    v.

EXPERIAN INFORMATION
SOLUTIONS, LLC.

        Defendant(s).

Civil Action No. 1:19-cv-03787-LGS-DCF

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW
## IN SUPPORT OF EXPERIAN'S  MOTION FOR SUMMARY JUDGMENT

JONES DAY
Kerianne Tobitsch
250 Vesey Street
New York, NY 10281
Telephone:  (212) 326-8321
Facsimile:  (212) 755-7306
Email: ktobitsch@jonesday.com

*Attorneys for Defendant
Experian Information Solutions, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 6

    I.      EXPERIAN'S PROCEDURES ........................................................ 6

          A.    Procedures For Reporting Student Loans ................................. 6

          B.    Experian's Procedure For Monitoring Furnishers And Their Data ............ 7

    II.    MADER'S EXCEL GRAD LOAN ................................................ 8

    III.    MADER FILES FOR BANKRUPTCY ......................................... 9

    IV.    MADER DID NOT SUFFER ACTUAL DAMAGES ..................... 10

LEGAL ARGUMENT ........................................................................................ 11

    I.      LEGAL FRAMEWORK ................................................................ 11

          A.    Loans Made Under A "Program" Funded In Whole Or In Part By A Nonprofit Institution, Including Governmental Units......................... 13

          B.    An Obligation To Repay Funds Received As An "Educational Benefit" ................................................................................. 14

          C.    "Qualified Education Loans" ................................................. 15

    II.    EXPERIAN IS ENTITLED TO SUMMARY JUDGMENT ............ 16

          A.    Experian's Reporting Was Accurate ....................................... 16

          B.    Experian Is Not Required To Adjudicate The Legal Validity Of A Debt....................................................................................... 18

          C.    Experian's Procedures Were Reasonable ............................... 18

          D.    Experian May Rely Upon Reliable Sources Of Credit Information ........ 20

          E.    Experian Conduct Was Not Willful ....................................... 23

          F.    Mader Did Not Suffer Actual Damages ................................. 25

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Beesley v. Royal Bank of Canada*,
  2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013) ...........................................17

*Berry v. Schulman*,
  807 F.3d 600 ...........................................................................................................23

*Braun v. Client Servs., Inc.*,
  14 F. Supp. 3d 391 (S.D.N.Y. 2014).....................................................................25

*Brown v. Citibank, N.A.*,
  539 B.R. 853 (Bankr. S.D. Cal. 2015) ............................................................14, 17

*Brown v. Rust*,
  510 B.R. 562 (Bankr. E.D. Ky. 2014) ...................................................................17

*Carow v. Chase Student Loan Serv.*,
  2011 WL 802847 (Bankr. D. N.D. Mar. 2, 2011)...................................................17

*Childress v. Experian Info. Sols., Inc.*,
  790 F.3d 745 (7th Cir. 2015) .................................................................................20

*Crump v. Carrington Mortg. Svcs.*,
  2019 WL 118490 (N.D. Ill. Jan. 7, 2019)..............................................................21

*DeAndrade v. Trans Union LLC*,
  523 F.3d 61 (1st Cir. 2008).....................................................................................18

*Diaz v. Experian Info. Sols. Inc.*,
  2019 WL 6340155 (D. Nev. June 21, 2019)...........................................................24

*Frederick v. Capital One Bank, N.A.*,
  2015 WL 5521769 (Sept. 17, 2015)....................................................................1, 18

*Frydman v. Experian Information Solutions*,
  2016 WL 11483839 (S.D.N.Y Aug. 11, 2016)............................................. *passim*

*Gagasoules v. MBF Leasing LLC*,
  2009 WL 10709179 (E.D.N.Y. Feb. 2, 2009).........................................................1

*Henson v. CSC Credit Servs.*,
    29 F.3d 280 (7th Cir. 1994) ............................................................................20, 21

*Heyer v. Experian Info. Sols. Inc.*,
    2019 WL 2869337 (E.D. Wis. July 3, 2019) ......................................................4, 23

*Humphrey v. Trans Union LLC*,
    2019 WL 125667 (7th Cir. Jan. 8, 2019) ................................................................18

*Hupfauer v. Citibank, N.A.*,
    2016 WL 4506798 (N.D. Ill. Aug. 19, 2016) ............................................5, 18, 22

*In re Daymon*,
    490 B.R. 331 (Bankr. N.D. Ill. 2013) ....................................................................17

*In re Desormes*,
    2012 WL 4106765 (Bankr. D. Conn. Sept. 18, 2012) .................................... *passim*

*In re Drumm*,
    329 B.R. 23 (W.D. Pa 2005) ..........................................................2, 3, 13, 17

*In re Jean–Baptiste*,
    584 B.R. 574 (Bankr. E.D.N.Y. 2018) ........................................................ *passim*

*In re Moon*,
    2019 WL 6904138 (Bankr. E.D. Wis. Dec. 18, 2019) .................................... passim

*In re O'Brien*,
    419 F.3d 104 (2nd Cir. 2005) ..........................................................14, 19, 24

*In re Shanks*,
    2014 WL 4365962 (Bankr. N.D. Ga. Aug. 28, 2014) ............................................18

*In re Traversa*,
    444 F. App'x 472 (2d Cir. 2011) ....................................................................11, 22

*Kidd v. Student Loan Xpress, Inc.* (*In re Kidd*),
    458 B.R. 612 (Bankr. N.D. Ga. 2011) ....................................................................14

*Matter of Thomas*,
    931 F.3d 449 (5th Cir. 2019) ................................................................................11

*Micko v. Student Loan Fin. Corp.*,
    356 B.R. 210 (Bankr. D. Ariz. 2006) ....................................................................17

*Monroe v. Guilford Cty. Dist. Court,*
  2015 WL 4873002 (M.D.N.C. Aug. 13, 2015)..........................................................................24

*Ogbon v. Beneficial Credit Servs., Inc.,*
  2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013)............................................................................21

*Okocha v. Trans Union LLC,*
  2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011).........................................................................16

*Padgett v. Clarity Svcs., Inc.,*
  2018 WL 6628274 (M.D. Fla. Dec. 13, 2018)......................................................................6, 18

*Phillips v. Archstone Simi Valley LLC,*
  740 F. App'x 603 (9th Cir. 2018) ...........................................................................................20

*Podell v. Citicorp Diners Club, Inc.,*
  914 F. Supp. 1025 (S.D.N.Y. 1996).........................................................................................20

*Roy v. Sallie Mae,*
  2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010) ..................................................................17

*Saenz v. Trans Union, LLC,*
  621 F. Supp. 2d 1074 (D. Or. 2007) ........................................................................................21

*Safeco Ins. Co. of Am. v. Burr,*
  551 U.S. 47 (2007)....................................................................................................................23

*Sarver v. Experian Info. Sols.,*
  390 F.3d 969 (7th Cir. 2004) ...................................................................................................21

*Shaw v. EduCap, Inc.,*
  2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015)..........................................................17, 24

*Shaw v. Experian Info. Sols., Inc.,*
  891 F.3d 749 (9th Cir. 2018) ...................................................................................................24

*Skipworth v. Citibank Student Loan Corp.,*
  2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010) ...............................................................17

*Wenning v. On-Site Manager, Inc.,*
  2016 WL 3538379 (S.D.N.Y. Jun. 22, 2016) ..........................................................................18

*Whelan v. Trans Union Credit Reporting Agency,*
  862 F. Supp. 824 (E.D.N.Y. 1994) .................................................................................1, 16, 17

*Wilson v. Corelogic SafeRent, LLC*,
   2017 WL 4357568 (S.D.N.Y. Sept. 29, 2017).........................................................................22

*Wright v. Experian Info. Sols., Inc.*,
   805 F.3d 1232 (10th Cir. 2015) ............................................................................................21

## INTRODUCTION

Michel Mader pleads claims under Section 1681e(b) of the Fair Credit Reporting Act and Section 380 of the New York Fair Credit Reporting Act for Experian's alleged failure to have a procedure to distinguish between "Qualified Education Loans" to attend Title IV schools and what he calls "Consumer Education Loans."   Mader contends that this failure violated the FCRA because it resulted in Experian continuing to report student loans to attend non-Title IV schools after a consumer had emerged from bankruptcy.  But as demonstrated below, loans to attend non-Title IV schools can be—and most often are—***non-dischargeable*** in bankruptcy.  Thus, the procedure Mader claims Experian should have followed would have resulted in the inaccurate reporting of non-dischargeable debt—the antithesis of a reasonable one.  Experian's procedures, on the other hand, conform to industry custom and practice, and resulted in the reporting of accurate credit information.  Thus, Experian is entitled to summary judgment.[1]

_First_, in order to establish a violation Section 1681e(b) (and its state equivalent), Mader must show that Experian reported inaccurate credit information.  *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (accuracy is a complete defense under Section 1681e(b)).  The evidence establishes that Mader's loan—an "Excel" grad loan from Sallie Mae (which later was assigned to Navient)—was ***non-dischargeable*** in bankruptcy.  Thus, Experian's continued reporting of that loan, post-bankruptcy, was not inaccurate.  This is so regardless of whether the institution Mader attended was a non-Title IV school because the relevant statute governing the discharge of student debt—11 U.S.C. § 523(a)(8)—is written in the ***disjunctive***, with only ***one*** part of that statute being relevant to Title IV schools.

---

[1] The "NYFCRA is [a] consumer protection statute that is styled after the FCRA and courts in the Second Circuit interpret these statutes similarly." *Gagasoules v. MBF Leasing LLC*, 2009 WL 10709179, at *4 (E.D.N.Y. Feb. 2, 2009).

To determine whether a student loan is dischargeable in bankruptcy, courts *first* look to see if the debt falls within Subsection A of Section 523(a)(8), which sets forth three separate categories of loans that are non-dischargeable—to wit:

> (1)    Educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit.
>
> (2)    Educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution.
>
> (3)    Obligations to repay funds received as an educational benefit, scholarship, or stipend.

11 U.S.C. § 523(a)(8)(A); *In re Jean–Baptiste*, 584 B.R. 574, 584 (Bankr. E.D.N.Y. 2018). The dischargeablity determination under Subsection A does **_not_** depend upon whether a loan was a "qualified education loan" to attend a Title IV school. *See, e.g.*, *In re Moon*, 2019 WL 6904138 at *6 (Bankr. E.D. Wis. Dec. 18, 2019) ("Unlike subsection (8)(B), subsection (8)(A)(i) simply requires that the debt at issue arise from a loan that is educational in nature; it need not comply with the IRC definition of 'qualified education loan.'").

As the Second Circuit has held, loans to attend non-Title IV schools regularly are found to be ***non-dischargeable*** under Subsection A. *In re Desormes*, 2012 WL 4106765, at *3 (Bankr. D. Conn. Sept. 18, 2012), aff'd 569 Fed. App'x 42, 43 (2d Cir. 2014) (affirming bankruptcy court's holding that a loan to attend a non-Title IV school was not discharged in bankruptcy because, under Section 523(a)(8)(A)(ii), it conferred an "educational benefit"); *In re Drumm*, 329 B.R. 23 (W.D. Pa 2005) ("Excel" loan to attend non-Title IV school non-dischargeable because it was made under a program funded in whole or in part by a nonprofit institution). Only if a loan does not fall within one of the categories in Subsection A will a court look to see if it is dischargeable under Subsection B, which excludes from discharge any "qualified education loan" under Section 221(d)(1) of the Internal Revenue Code. 11 U.S.C. § 523(a)(8)(B); *Jean–Baptiste*, 584

B.R. at 584.  As Judge Scarcella put it:  "The first three categories fall within § 523(a)(8)(A), while the last category falls under § 523(a)(8)(B).  Subsections (A) and (B) of § 523(a)(8) are mutually exclusive."  *Id.*

Here, Mader contends that his "Excel" loan was dischargeable under **Subsection B** because he attended a non-Title IV school.  But he altogether **ignores** whether that same loan is non-dischargeable under **Subsection A**.  The evidence establishes that Mader's loan was non-dischargeable under two categories in Subsection A.  First, Mader's "Excel" loan was non-dischargeable under Section 532(a)(8)(A)(i) because it was made under a program that was funded, in part, by non-profit organizations, including governmental units.  That fact is clear on the face of the Promissory Note for this loan.  Indeed, the court in *Drumm* found that "Excel" loans are non-dischargeable because they are made under a program funded in whole or in part by a nonprofit institution.  *Drumm*, 329 B.R. at 33-35.  Second, Mader's loan was non-dischargeable under Section 532(a)(8)(A)(ii) because the loan conferred an "educational benefit"—a fact that Mader admits.  Because the loan was non-dischargeable under Subsection A, it is **irrelevant** whether that same loan would be non-dischargeable under Subsection B as a "qualified education loan."  *Jean–Baptiste*, 584 B.R. at 584 ("Because the subsections of § 523(a)(8) are mutually exclusive, the Court need not address plaintiff's argument that the Access Loans [which are non-dischargeable under Subsection A] are not 'qualified educational loans' under  § 523(a)(8)(B).").  Because Mader's loan was not discharged in bankruptcy, it was not inaccurate for Experian to continue to report that debt, thus entitling Experian to summary judgment.[2]

---

[2] As Navient explains in its accompanying declaration, Mader's Excel loan also may be non-dischargeable under Subsection B because non-dischargeability under that subsection applies to loans to attend Title IV schools, **_as well as_** loans to attend "an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training."  In other words, non-dischargeablity under Subsection B covers **_both_** Title IV and non-Title IV schools.

<u>Second</u>, in accurately reporting Mader's loan, Experian employed reasonable procedures. Numerous courts, including the Second Circuit, have found that loans to attend non-Title IV schools are non-dischargeable under Subsection A.  Moreover, by statute, loans to attend non-Title IV schools also may be non-dischargeable under Subdivision B if the loan was to attend "an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training."  26 U.S.C. § 221(d)(2)(B).  That being the case, even if Experian knew what school Mader attended, that information would ***not*** be determinative of whether the loan would be discharged in bankruptcy.  That is, loans to attend a non-Title IV school may be—and often are—non-dischargeable in bankruptcy for many different reasons.  Thus, where, as here, a consumer reporting agency's procedures have "support in the courts," *see See Heyer v. Experian Info. Sols. Inc.*, No. 19-cv-15, 2019 WL 2869337, at *3 (E.D. Wis. July 3, 2019) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70, n.20 (2007)—and numerous courts, including the Second Circuit, have found that loans to attend non-Title IV schools routinely are ***non-dischargable*** in bankruptcy—there cannot be a FCRA claim grounded upon a failure to have a procedure that would automatically (and improperly) delete, post-bankruptcy, any student loan to taken out to attend a non-Title IV school.

<u>Third</u>, Mader never filed a dispute with Experian contending that his loan was discharged. In the absence of such a dispute, Experian may rely upon information that it receives from a reliable credit source.  *See*, *e.g.*, *Frydman v. Experian Information Solutions*, 14cv9013-PAC-FM, 2016 WL 11483839 at * 12 (S.D.N.Y Aug. 11, 2016) ("Courts have consistently held . . . that a CRA does not violate its duty to assure reasonable accuracy pursuant to Section 1681e(b) simply by reporting an inaccurate debt or judgment, absent prior reason to believe that its source was

unreliable.").  Here, the evidence establishes that Experian has extensive procedures in place to audit and monitor creditors (and the data they furnish) to ensure that they are reliable sources of information.  Experian did not possess any information that would have indicated that the furnishers of information on the Navient loan were unreliable sources.  None ever informed Experian that Mader's loan was to attend a non-Title IV school or that it was discharged in bankruptcy.  In point of fact, Navient still maintains that the loan was ***not*** discharged.

Moreover, under the FCRA, it is not a consumer reporting agency's obligation to monitor the proceedings of a consumer's bankruptcy—scouring the pleadings, deciphering their legal consequences, and applying those legal consequences to a consumer's credit file—to determine whether a particular debt was discharged.  *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016) (dismissing FCRA claims because a third party credit bureau is not required "to determine whether a specific account was discharged in a particular consumer's . . . bankruptcy").  But even if the law imposed such an obligation, there is nothing in the bankruptcy court's file that would have indicated that Mader's loan was discharged.  Indeed, all of the data available to Experian shows the loan ***not*** discharged.  The Discharge Order says that "most" student loans are not discharged.  Moreover, soon after the bankruptcy proceedings had concluded, Mader signed a loan modification agreement, which was communicated to Experian and indicated that the loan was not discharged.  After modifying the terms, Mader—for the next four years—made payments on the loan, which also were communicated to Experian.  In the absence of publicly available data showing that a debt was being inaccurately reported by an unreliable credit source, there is no claim under Section 1681e(b) of the FCRA.

<u>Fourth</u>, although, with the benefit of discovery obtained in the course of litigation, Experian is able to show that Mader's loan was non-dischargeable, the law does not require Experian to

5

adjudicate the validity of a debt in fulfilling its obligations under the FCRA.  Instead, that is the exclusive role of a bankruptcy court.  That is the forum where issues over whether a loan conferred an "education benefit," or whether it was made under a program that was funded by a nonprofit, are to be first adjudicated.  Consumer reporting agencies are ill-equipped to resolve such legal disputes and, under the FCRA, they are not required to do so.  *Padgett v. Clarity Svcs., Inc.*, 2018 WL 6628274, at *3 (M.D. Fla. Dec. 13, 2018) (collecting cases and stating "multiple circuit courts have held that the FCRA does not require a CRA . . . to adjudicate disputed debts").

<u>Fifth</u>, the negligent violation claims independently fail because Mader has not suffered "actual damages," which is a necessary element of the claim.  *Frydman*, 2016 WL 11483839 at *9. Indeed, the evidence establishes that Experian's continued reporting of the Navient loan, including Mader's four years of positive payments, ***improved*** his credit score and credit reputation.

For all of these reasons, Experian is entitled to summary judgment.

## STATEMENT OF FACTS

## I.   EXPERIAN'S PROCEDURES

### A.   Procedures For Reporting Student Loans

In order to ensure consistency of reported information across all credit bureaus, Experian and its competitors (*e.g.*, Transunion, Equifax) worked together with the Consumer Data Industry Association ("CDIA"), an international trade association.  (Declaration of Kimberly Cave ("Cave Decl.), ¶ 14.) With the bureaus' support and participation, the CDIA documented uniform procedures—known as "Metro 2"—for all data furnishers who wish to report information to Experian and/or one of its competitors.  (*Id.*)  *See* https://fiscal.treasury.gov/files/reference-guidance/fedcreditbureauguide.pdf at p. 1-2; 2-12; *see also* Consumer Financial Protection

Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at:

http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

  The CDIA has documented the Metro 2 procedures in a manual known as the Credit Reporting Resource Guide ("CRRG"). (Cave Decl., ¶ 14.) Under the CRRG, data being reported by furnishers can be sent to all three consumer credit reporting agencies in the same format and at the same time. (*Id*.) As the CFPB explains, "[a]n obvious benefit of a shared data format is that all furnishers can report trade line information the same way." *See* Key Dimensions, at 15. Of significance to this case, the CRRG sets forth procedures with regard to the reporting of student loans. (Declaration of Michael Turner ("Turner Decl.") Ex. 1 [Turner Report], ¶¶ 4, 31; Cave Decl., ¶ 15 and Ex. 1.) At all times relevant to this action, data furnishers reported student loan information to consumer reporting agencies under Metro 2 guidelines. (Turner Decl., Ex. 1 at ¶¶ 4, 31; Cave Decl., ¶¶ 13-14.) Under Metro 2, furnishers are not required—or even able—to report the name of the school attended (or the school code) that may be associated with a student loan. (Cave Decl., ¶ 15 and Ex. 1.)

  **B. Experian's Procedures For Monitoring Furnishers And Their Data**

  Experian obtains consumer credit information from its furnishers pursuant to the Metro 2. (Cave Decl., ¶¶ 13-14.) At all times relevant to this action, Navient and its predecessors were furnishers. (*Id*.) Before Experian accepts credit data from any of its furnishers, they must go through a vetting process called "on boarding." (*Id*.) Once approved and all contracts and data agreements are executed, Experian begins receiving the furnisher's data. (*Id*.) All of the furnishers that reported the trade line data appearing in Mader's file at Experian, including those that reported information about his Navient loan, were subject to the aforementioned procedures. (*Id*.)

After credit data is received by Experian and before it is added to a consumer's file, the data is subjected to rigorous manual and automated quality control and statutory compliance procedures to ensure that only accurate information is reported.  (*Id.*, ¶ 18.)  As part of its procedures to ensure that subscribers only report accurate information, Experian has built into its computer system automated controls to detect possible errors.  (*Id.*)  These controls include checks to ensure that the data does not violate Experian's policies regarding the display of adverse consumer information, or any prescriptions of the FCRA.  (*Id.*)  All information related to Mader's Navient loan was reported to Experian pursuant to the Metro 2.  (*Id.*, ¶ 22.)  Moreover, all of the trade line data appearing in Mader's file at Experian, including the data regarding his Navient loan, was subject to the aforementioned quality checks and controls.  (*Id.*)  At all times relevant to this action, Experian did not possess any information that indicated that the entities that furnished trade line data on the Navient loan reported prevalent unreliable information.  (*Id.*)

## II.     MADER'S EXCEL GRAD LOAN

EXCEL Grad Loans are flexible, private education loans that complement the Federal Stafford Loan program.  (*See* Declaration of John Zemetro ("Zemetro Decl."), at ¶ 4 and Ex. 1.)  They are designed for graduate and professional students who have borrowed their maximum Federal Stafford Loan amounts but still have remaining college expenses.  (*Id.*)  At all times relevant to this action, the program from which EXCEL Grad Loans were made was funded, in part, by non-profit organizations, including governmental units.  (*Id.*)

On March 21, 2008, Mader obtained an EXCEL Grad loan in the amount of $18,000 to attend Reformed Theological Seminary.  (*Id.*, *see also* First Amended Complaint ("FAC"), ¶ 46.)  That loan was made under program that was funded, in part, by non-profit organizations, including governmental units.  (Zemetro Decl., ¶ 4.)  That loan was subsequently assigned to Navient

Corporation.  (*Id.*, ¶ 3.)  Mader admits that the Navient loan was for his education (to attend graduate school), and provided him with an "educational benefit."  (Declaration of John A. Vogt ("Vogt Decl."), Ex. 1 [Deposition of Michael Mader] at 10:17-24, 25:7-15, Ex. 2 at 98:15-17.)

In connection with obtaining that loan, Mader executed a Promissory Note, which he read and understood before he signed.  (*Id.*, 12:20-25, 16:5-25, 17-18, 21:6-23; Zemetro Decl., ¶ 4 and Ex. 1.)  The Promissory Note provides that the loan was made under a program that is funded, in part, by nonprofit organizations, including governmental units:  "I understand that this loan is an educational loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units[.]"  (*Id.*)  After obtaining the loan, Mader submitted to Navient an "In-School Deferment Form"—which both Mader and the Reformed Theological Seminary completed and signed—that represents that the Reformed Theological Seminary is a "qualified school."  (Zemetro Decl., ¶ 5 and Ex. 2.)

## III.   MADER FILES FOR BANKRUPTCY

On December 28, 2012, Mader filed for bankruptcy.  (FAC, ¶ 54.)  The bankruptcy court issued a Discharge Order on April 16, 2013, to discharge his pre-petition debt.  (FAC, ¶ 55; Request for Judicial Notice ("RJN"), Ex. 1 [Discharge Order].)  The Discharge Order provides that Mader "is released from all *dischargeable* debts."  (RJN, Ex. 1 (emphasis added).)  The Discharge Order then provides that there are certain categories of debts that are not discharged in bankruptcy, including debts for "most student loans."  (*Id.*)  The Discharge Order concludes by admonishing:  **"Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case."**  (*Id.* (emphasis in original).)  Although he was represented by counsel, Mader never sought a determination in the bankruptcy court that the Navient loan was discharged.  (Vogt Decl., Ex. 1 at 60:5-8; Zemetro Decl., ¶ 8.)

Soon after Mader emerged from bankruptcy, Navient sent him a letter advising him that the Navient loan was not discharged.  (Vogt Decl., Ex. 1 at  46-49; Zemetro Decl., ¶ 6 and Ex. 3.)  Thereafter, Mader and Navient entered into a loan modification agreement, under which Mader agreed to make payments on the Navient loan, but for smaller amounts than what were originally required.  (Vogt Decl., Ex. 2 at 62-64.) The loan modification agreement was communicated to Experian, and is reflected in Mader's file.  (Cave Decl., ¶ 24 and Ex. 2.)  For the next four years, Mader made payments on the Navient loan pursuant to that agreement.  (Vogt Decl., Ex. 1 at 50:24-25, 51:2-11, 56:8-22; Zemetro Decl., ¶ 7 and Ex. 4.)   Each of those payments was communicated to Experian, and is reflected in Mader's file. (Cave Decl., ¶ 24 and Ex. 2.)

 Mader never filed a dispute over how Experian reported the Navient Loan.  (Vogt Decl, Ex. 2 at 78-81; Cave Decl., ¶ 25.)  Navient never communicated to Experian that the Navient Loan was discharged in bankruptcy.  (Zemetro Decl., ¶ 8; Cave Decl., ¶ 24.)  Nor, did Navient ever communicate to Experian what school Mader attended or its school code.  (Zemetro Decl., ¶ 8; Cave Decl., ¶ 22.)  Experian did not possess any information that would have indicated that the loan was discharged.  (Cave Decl., ¶ 24.)  And, Navient still maintains that the loan was not discharged.  (Zemetro Decl., ¶¶ 6, 8.)

## IV.   <u>MADER DID NOT SUFFER ACTUAL DAMAGES</u>

After Mader emerged from bankruptcy, he did not apply for any new lines of credit.  (Vogt Decl., Ex. 2 at 109:21-25, 110-111 (Mader conceding same).)   The reason why is because, according to Mader, he filed for bankruptcy and, therefore, had a bankruptcy indicator on his file.  (*Id*. at 110:10-21.)  Mader concedes that the bankruptcy indicator—not the continued presence of

the Navient loan on his file—is what caused him not to seek new lines of credit: "I knew my credit was shot." (*Id*. at 110:10-12.)[3]

In response to Experian's interrogatories seeking facts, Mader did not identify any actual damages. (Vogt Decl., ¶ 6 and Ex. 5 [Interrogatory No. 21].) Nor, did he produce any documents showing actual damages—either that he would have gotten better credit terms had the Navient Loan been deleted, or suffered a decline in credit (or credit reputation) due to the continued presence of the Navient loan on his file. (*Id*., ¶ 6.) He did not even designate an expert on the issue of damages. (*Id*.) Conversely, Experian designated an expert who explains in his report that Mader did not suffer any damages as a result of the Navient loan appearing in his file post-bankruptcy. (Turner Decl., Ex. 2 at ¶¶ 48-50.) In fact, as Dr. Turner explains, because Experian did not delete the Navient account, Experian was able to report Mader's four years of positive payments on this loan, which improved Mader's credit reputation and credit score. (*Id*. at ¶ 50.)

## LEGAL ARGUMENT

## I.     LEGAL FRAMEWORK

Chapter 7 of Title 11 of the United States Code governs the process of liquidation. Under Chapter 7, student loans are not automatically discharged. In fact, as the Second Circuit has held, there is a presumption ***against*** the dischargeability of loans taken out for educational purposes. *In re Traversa*, 444 F. App'x 472, 473 (2d Cir. 2011) (recognizing "the statutory presumption against a student loan discharge…"); *Matter of Thomas*, 931 F.3d 449, 453-54 (5th Cir. 2019) ("Section 523(a)(8) as it stands today excepts virtually all student loans from discharge . . . . Congress's series of amendments clearly evinces an intent to limit bankruptcy's use as a means of offloading student loan debt except in the most compelling circumstances.").

---

[3] In corrections to his deposition, Mader indicates that he opened two new lines of credit during the period within which the Navient Loan appeared in his file post-bankruptcy.

Section 523(a)(8) provides that, except in cases of undue hardship, the following types of educational loans are protected from a bankruptcy discharge:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; _**or**_
>
> (B) any other educational loan that is a qualified educational loan, as defined in  section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8) (emphasis added).  There are thus "four categories" of educational loans that are nondischargeable under Section 523(a)(8):  (1) educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit; (2) educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) obligations to repay funds received as an educational benefit, scholarship, or stipend; _**or**_ (4) any  other  educational  loan  that  is  a  "qualified  education  loan"  under section 221(d)(1) of the Internal Revenue Code. _Jean–Baptiste_, 584 B.R. at 584.  "The first three categories fall within § 523(a)(8)(A), while the last category falls under  § 523(a)(8)(B)." _Id_. Thus, "Subsections (A) and (B) of § 523(a)(8) are mutually exclusive." _Id_.

Only if a student loan does not meet one of the three categories of Subsection A of Section 523(a)(8) will a court look to see if the loan is a "qualified education loan" under Subsection B.  _Id_.  ("Because the subsections of  § 523(a)(8) are mutually exclusive, the Court need not address plaintiff's argument that the Access Loans are not 'qualified educational loans' under  § 523(a)(8)(B)."); _Moon_, 2019 WL 6904138 at *6 (holding same).  If a student loan falls into **_any_** of the four categories in Section 523(a)(8), the loan is non-dischargeable. _Jean–Baptiste_, 584 B.R. at 583-85.

## A. Loans Made Under A "Program" Funded In Whole Or In Part By A Nonprofit Institution, Including Governmental Units

One of the express non-dischargeability categories under Subsection A covers *any* "educational loans" that were made under a "program" partially or fully funded by a nonprofit institution, including governmental unit. 11 U.S.C. § 523(a)(8)(A)(i). The "*stated purpose* and not the actual use of the loan determines whether a loan is an 'educational loan' excepted from discharge under § 523(a)(8)." *Jean–Baptiste*, 584 B.R. at 584 (emphasis in original).

Of significance to this case, to be non-dischargeable in bankruptcy, there is *no* requirement under Section 523(a)(8)(A)(i) that an "educational loan" be a "qualified education loan" to attend a Title IV school. That is, non-dischargeability under Section 523(a)(8)(A)(i) broadly applies to loans to attend Title IV schools *as well as* loans to attend non-Title IV schools:

> Contrary to Moon's theory, subsection (8)(A)(i) does not incorporate the IRC term "qualified education loan." While the final subsection of section 523(a)(8), subsection (B), cites to and incorporates the IRC term "qualified education loan," Congress elected not to impose that requirement on the categories of loans covered by subsection (A)(i) or (A)(ii). Thus, the IRC definition only applies to the third of section 523(a)(8)'s three categories of student loans – those loans made by private, for-profit student lenders described in subsection (B).
>
> \*       \*       \*
>
> Unlike subsection (8)(B), subsection (8)(A)(i) simply requires that the debt at issue arise from a loan that is educational in nature; it need not comply with the IRC definition of "qualified education loan."

*Moon*, 2019 WL 6904138 at \*6; *Drumm*, 329 B.R. at 33-35 ("Excel" loan to attend non-Title IV school non-dischargeable under Section 523(a)(8)(A)(i)). A loan is "educational" for purposes of Section 523(a)(8)(A)(i) "if the 'purpose' of the loan was to support the debtor's educational goals." *Id*. (citing *In re Sokolik*, 635 F.3d 261, 265-67 (7th Cir. 2011) (In determining whether a loan is educational, a court "need only ask whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school.")).

Furthermore, as the Second Circuit has explained, in order to fall within the scope of Section 523(a)(8)(A)(i), the actual loan itself need **_not_** be funded by a governmental unit or non-profit.  *In re O'Brien*, 419 F.3d 104, 106 (2nd Cir. 2005); *Kidd v. Student Loan Xpress, Inc.* (*In re Kidd*), 458 B.R. 612, 620 (Bankr. N.D. Ga. 2011) (the requirement of "funding" applies to **_programs_**, not to specific loans); *Jean–Baptiste*, 584 B.R. at 585 (Section 523(a)(8)(A)(i) "does not require the actual loan itself be funded by a non-profit institution[.]").  Instead, a loan falls within Section 523(a)(8)(A)(i) if "the overall educational loan **_program_** [from which the loan is made] . . . receive[d] non-profit funding[.]"  *Id*. (emphasis added.)  In that event, "the exception from discharge [i]s met, subject to a finding of no hardship."  *Id*.; *O'Brien*, 419 F.3d at 106 ("Section 523(a)(8) does not require that [a nonprofit] fund O'Brien's loan in order for that section to be applicable.  Rather, § 523(a)(8) requires only that O'Brien's loan was 'made under any program funded in whole or in part by' [the nonprofit].").[4]

### B.    An Obligation To Repay Funds Received As An "Educational Benefit"

Another category under Subsection A excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship, or stipend[.]"   11 U.S.C. § 523(a)(8)(A)(ii).  While there currently is a split in authority over whether this provision applies to "loans," many courts, including the Second Circuit, have held that it does.  *See*, *e.g.*, *Desormes*, 569 Fed. App'x at 43 (2d Cir. 2014) (affirming bankruptcy court's holding that a student loan to a non-Title IV school was not discharged in bankruptcy because, pursuant to 11 U.S.C. § 523(a)(8)(A)(ii), it conferred an "educational benefit" and there was no showing of an undue hardship); *Brown v. Citibank, N.A.*, 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015) (finding that that a student loan was

---

[4]  Moreover, a suite of student loans that later get consolidated through a new loan issued under a program funded in whole or in part by a nonprofit renders all of the consolidated loans as non-dischargeable under Section 523(a)(8)(A)(i).  *See Moon*, 2019 WL 6904138 at *4-6.

non-dischargeable under Section 523(a)(8)(A)(ii) because it provided an "educational benefit," even though the debtor was not an eligible student at a Title IV institution).   Indeed, at the time that Mader took out his loan, and at the time he emerged from bankruptcy, virtually *every* court to consider the issue had found that loans that conferred an "educational benefit"—even loans to attend non-Title IV schools—were non-dischargeable in bankruptcy.[5]

###### C.    "Qualified Education Loans"

Only if an educational loan does not fall within the non-dischargeablity provisions of Subsection A of Section 523(a)(8) will a court look to see if it is non-dischargeable under Subsection B.  *Jean–Baptiste*, 584 B.R. at 584.  Subdivision B excepts from discharge "any ***other*** educational loan that is a qualified educational loan, as defined in  section 221(d)(1) of the Internal Revenue Code[.]"  11 U.S.C. § 523(a)(8)(B) (emphasis added).  Thus, on the face of the statute, whereas Subdivision A pertains to all "educational loans," Subdivision B concerns only "qualified educational loans as defined in  section 221(d)(1) of the Internal Revenue Code."

Section 221(d)(1) of the Internal Revenue Code defines a "qualified education loan" as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses[.]" 26 U.S.C. § 221(d)(1).  The term "qualified education expenses" means "the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution ..." 26 U.S.C. § 221(d)(2).  Under Section 221(d)(2), the term "eligible education institution" has the "same meaning given such term by section 25A(f)(2), ***except that such term shall also include*** an institution conducting an internship or residency program leading to a degree

---

[5] In opposition, Mader will likely cite some cases that held that the "educational benefit" provision does not apply to "loans."  But most, if not all, of those cases were decided *after* Mader had taken out his loan (in 2008) and *after* he had emerged from bankruptcy (in 2013).

or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training." 26 U.S.C. § 221(d)(2)(B) (emphasis added).  Under 11 U.S.C. § 25A(f)(2), the term "eligible educational institution" means a school that "is eligible to participate in a program under title IV of such Act."

Thus, on its face, Subdivision B of Section 523(a)(8) excludes from discharge any educational loans to attend a school that "is eligible to participate in a program under title IV of such Act," *as well as* any educational loans to attend "an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training."  In other words, the exclusion in Subsection B covers loans to attend Title IV *and* non-Title IV schools.

## II.   EXPERIAN IS ENTITLED TO SUMMARY JUDGMENT

### A.   Experian's Reporting Was Accurate

"[T]o sustain [] a § 1681e [] claim, a consumer must first make a 'prima facie showing of inaccurate reporting' by the CRA." *Whelan*, 862 F. Supp. at 829; *Okocha v. Trans Union LLC*, 2011 WL 2837594, at *5 (E.D.N.Y. Mar. 31, 2011) (same), *aff'd*, 488 F. App'x 535 (2d Cir. 2012). Mader contends that because his loan was to attend a non-Title IV school, it was automatically discharged in bankruptcy under Subsection B of Section 523(a)(8)(B), such that Experian's continued reporting of this debt, post-bankruptcy, was inaccurate.   The claim fails because the evidence establishes that Mader's loan was non-dischargeable under Subdivision A.  It is thus immaterial whether that same loan would be non-dischargeable under Subsection B.  *Jean–Baptiste*, 584 B.R. at 584.

First, his loan was non-dischargeable under Section 523(a)(8)(A)(i) because it was an education loan that was made under program that was funded, in part, by nonprofit organizations, including governmental units.  *Jean–Baptiste*, 584 B.R. at 584.  That fact is clear on the face of

the Promissory Note for this loan, and has been confirmed in the accompanying Navient declaration. (*See* Zemetro Decl., ¶ 4.) Courts that have considered the dischargeability of Excel loans have found that they are non-dischargeable under Subsection A. *See Drumm*, 329 B.R. at 33-35. Second, Mader's loan was non-dischargeable under Section 523(a)(8)(A)(ii) because, as Mader admits, the loan conferred an "educational benefit." *Desormes*, 569 Fed. App'x at 43 (private bar study loan was excepted from discharge under § 523(a)(8)(A)(ii)). The Second Circuit's decision in *Desormes* is in accord with most courts in the United States.[6]

Because Mader's student loan was non-dischargeable under Subsection A, and Mader never sought an "undue hardship" determination in the bankruptcy court, Experian's continued reporting of the debt, post-bankruptcy, was not inaccurate. Without an inaccuracy to support his claims, Experian is entitled to summary judgment. *Whelan*, 862 F. Supp. at 829.

---

[6] *See, e.g., In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013) (explaining that Congress, in passing Section 523(a)(8)(ii), closed the "loophole" such that any loan for an "educational benefit" falls within Section 523(a)(8)(A)); *Micko v. Student Loan Fin. Corp.*, 356 B.R. 210, 216 (Bankr. D. Ariz. 2006) (noting that "[i]t is undisputed that the Plaintiff committed himself to repay the money extended to him by the Defendant, as evidenced by the GOAL notes [and] it is undisputed that the loans at issue conferred an educational benefit on the Plaintiff. Thus, on the plain language reading of the statute ... the Plaintiff's loans are nondischargeable"); *Brown v. Citibank, N.A.*, 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015) (finding that "[ Section] 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit'"); *Beesley v. Royal Bank of Canada*, 2013 WL 5134404, at *5 (Bankr. W.D. Pa. Sept. 13, 2013) (stating that "[i]t is undisputed that the Debtor entered into the Royal Credit Line Agreement for Students (by its title, a loan for students), and consistent therewith, the proceeds were used for tuition, room and board, and books by the Debtor. Accordingly, this Court finds that the funds provided the Debtor with an educational benefit"); *Roy v. Sallie Mae*, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010) (finding that loans to pay for tutoring provided an "educational benefit" within the meaning of § 523(a)(8) because, among other reasons, the statute " 'must be read as encompassing a broader range of educational benefit obligations'"); *Skipworth v. Citibank Student Loan Corp.*, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. Apr. 1, 2010) (concluding that "the debtor's obligation ... is clearly 'an obligation to repay funds received as an educational benefit' for purposes of § 523(a)(8)(A)(ii) in that Citibank loaned funds to the debtor to assist the debtor with his educational expenses *i.e.* the debtor's bar review course"); *Shaw v. EduCap, Inc.*, 2015 WL 1000213, at *3 (Bankr. S.D. Tex. Mar. 3, 2015) (stating generally that "unless the debtor affirmatively secured a hardship determination, the discharge order will not include a student loan debt"); *Brown v. Rust*, 510 B.R. 562, 568, 571-72 (Bankr. E.D. Ky. 2014) (observing that "[u]nder the plain language of § 523(a)(8)(A)(ii), the debt herein is an 'obligation to repay funds received as an educational benefit'"); *Carow v. Chase Student Loan Serv.*, 2011 WL 802847, at *4 (Bankr. D. N.D. Mar. 2, 2011) (stating that a loan is not dischargeable if it confers an "educational benefit," even if it is not a loan to attend at Title IV school). The foregoing is **_not_** an exhaustive list of cases to have so held.

**B.**   **Experian Is Not Required To Adjudicate The Legal Validity Of A Debt**

A consumer reporting agency is "neither qualified nor obligated to answer" the question "whether a specific account was discharged in a particular consumer's . . . bankruptcy." *Hupfauer*, 2016 WL 4506798, at *7; *Humphrey v. Trans Union LLC*, 2019 WL 125667 (7th Cir. Jan. 8, 2019) (upholding dismissal of FCRA claims where the plaintiff alleged he was not liable for payments on student loan debt due to a disability discharge).   Instead, the adjudication of:   (1) whether Mader's loan was made under a program that was funded, in part, by a nonprofit institution, including a governmental unit, or (2) whether the loan conferred an educational benefit, should be first conducted in the bankruptcy court, which retained jurisdiction over Mader's bankruptcy case. And, in conducting that adversary proceeding, the bankruptcy court would need the presence of Navient, which is an indispensable party.  *In re Shanks*, No. 14–5189, 2014 WL 4365962, at *1 (Bankr. N.D. Ga. Aug. 28, 2014) (explaining that the holder of student-loan debt is a required party for purposes of dischargeability determinations).

Thus, to the extent Mader contends that there is a triable issue over whether his loan was discharged in bankruptcy, Experian is entitled to summary judgment because the legal question of discharge is an "issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008); *Padgett*, 2018 WL 6628274, at *3 (dismissing Section 1681e(b) claim on that basis); *Phillips v. Archstone Simi Valley LLC*, 740 F. App'x 603, 604 (9th Cir. 2018) (holding same).

**C.**   **Experian's Procedures Were Reasonable**

The FCRA does not require Experian to be infallible, *see Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, at *16 (S.D.N.Y. Jun. 22, 2016); nor does the FCRA impose strict liability.  *Frederick v. Capital One Bank, N.A.*, 2015 WL 5521769, at *7 (Sept. 17, 2015) ("even

if some information in a consumer credit report is inaccurate, a credit reporting agency is not held strictly liable under the FCRA merely for reporting it"). Instead, under Section 1681e(b), Experian needs to have "reasonable" procedures in reporting debts. And, here, the evidence establishes that Experian's procedures for reporting student loans conform to industry custom and practice.

Under Metro 2 guidelines, there is no requirement—or even ability—for a furnisher to identify school name or school code to a consumer reporting agency when reporting a student loan debt. The lack of such a requirement under Metro 2 makes perfect sense. A school name or school code will not indicate whether the loan was made under a program that was funded, in part, by a nonprofit institution, including a governmental unit. But as the Second Circuit has held, all such loans—whether to attend a Title IV or a non-Title IV school—are non-dischargeable under Subsection A of Section 523(a)(8). *O'Brien*, 419 F.3d at 106. Nor, will a school name or school code indicate whether the loan provided an "educational benefit" which, as the Second Circuit also has held, would render it independently non-dischargeable under Subsection A. *Desormes*, 569 Fed. App'x at 43. A school code also would not indicate whether the non-Title IV school was "an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training," which would render a loan to attend a non-Title IV school non-dischargeable under Subdivision B. *See* 11 U.S.C. § 523(a)(8)(B); 26 U.S.C. § 221(d)(2)(B). Finally, consumers often time consolidate their student loans. Thus, a student loan that may be dischargeable when it was disbursed may become non-dischargeable if it is later consolidated with other loans. That was the holding in *In re Moon*, which found that the suite of consolidated loans were non-dischargeable because the consolidating loan was made under a program that was funded in part by a nonprofit. 2019 WL 6904138 at *6. Thus, collecting school code information at loan

inception—even for loans that may be dischargeable at loan inception—would not be determinative of whether the debt on that loan ultimately would be discharged in bankruptcy.

Conversely, Mader's proposed procedure—requiring Experian to obtain, at loan inception, whether it was to pay tuition at a non-Title IV school, and to delete all student loans, post-bankruptcy, that had that indicator on file—would result in the ***inaccurate*** reporting of non-dischargeable debt, which is an unreasonable one. In *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015), the plaintiff also claimed that Experian should have utilized a different procedure concerning the reporting of bankruptcy-related debts. In affirming the district court's grant of summary judgment to Experian, the court explained that the "procedure urged by the plaintiff is not 'reasonable,'" as it "would put an enormous burden on the consumer credit-reporting agencies." *Id.*, at 747. So too here, Mader's proposed procedure not only would require consumer reporting agencies to collect and store data elements that are not indicative of whether a loan would be discharged, but worse, it would require Experian to delete non-dischargeable student loan debts. In short, Experian's procedure to follow Metro 2 guidelines—*i.e.*, industry custom and practice—in collecting and reporting student debt is a reasonable one.

### D.   Experian May Rely Upon Reliable Sources Of Credit Information

In following its procedures, and in the absence of a consumer dispute, Experian is entitled to rely upon reliable sources of credit information in reporting consumer debts, which independently defeats Mader's claims. *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996), aff'd, 112 F.3d 98 (2d Cir. 1997) (a CRA is "entitled to report [inaccurate debt], at least until it heard from [the] plaintiff directly"); *Frydman*, 2016 WL 11483839 at * 12 (same); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (consumer reporting agencies are not required "to go beyond the face of numerous court records to determine whether

they correctly report the outcome of the underlying action"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (same; extending *Henson* to "records from financial institutions"); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (same); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1081 (D. Or. 2007) ("If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [§1681e(b)] simply by reporting an item of information that turns out to be inaccurate.").

To establish that a furnisher is unreliable, there must be evidence that the consumer reporting agency was on actual "***notice***" of "***prevalent unreliable information***" from that lender: "In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate [prior to receiving a consumer dispute] would be reasonable given the enormous volume of information Experian processes daily."  *Sarver*, 390 F.3d at 972-73; *Frydman*, 2016 WL 11483839, at *12-13 (same; following *Sarver*);  *Ogbon v. Beneficial Credit Servs., Inc.*, 2013 WL 1430467, at *7 (S.D.N.Y. Apr. 8, 2013) (same; following *Sarver); Crump v. Carrington Mortg. Svcs.*, 2019 WL 118490, at *6 (N.D. Ill. Jan. 7, 2019) (following *Sarver*, and holding that "prior to receiving [plaintiff's] dispute letter, Experian did not violate § 1681e(b) by relying on the information that [the furnisher] reported[.]").  Here, the evidence establishes that Experian has extensive procedures in place to audit and monitor lenders (and the data they furnish) to ensure that they are reliable sources of information.  Experian did not possess ***any*** information that would have indicated that the furnishers of information on the Navient loan were unreliable sources.

Moreover, it is not a consumer reporting agency's obligation to monitor the proceedings of a consumer's bankruptcy—scouring the pleadings, deciphering their legal consequences, and

applying those legal consequences to a consumer's credit file—to determine whether a debt was discharged. *Hupfauer*, 2016 WL 4506798, at *7 (dismissing FCRA claims because a third party credit bureau is not required "to determine whether a specific account was discharged in a particular consumer's . . . bankruptcy"). But even if the law imposed such an obligation, there is nothing in the bankruptcy court's file that would have indicated that Mader's loan was discharged.

That is why this case is very different than *Wilson v. Corelogic SafeRent, LLC*, 14 Civ. 2477, 2017 WL 4357568, at *3 (S.D.N.Y. Sept. 29, 2017), where the evidence established that had the defendant reviewed available court records, it would have revealed the inaccuracy in the reporting. 2017 WL 4357568, at *3   Here, all of the public data available to Experian shows Mader's loan was ***not*** discharged. The Discharge Order says that "most" student loans are not discharged. Indeed, the Second Circuit has held that there is a presumption *against* the dischargeability of loans taken out for educational purposes. *Traversa*, 444 F. App'x at 473. There is nothing in the bankruptcy court records indicating whether Mader's loan did (or did not) confer an "educational benefit." There is nothing in the bankruptcy court's record indicating whether the loan was (or was not) made under a program funded in part by a nonprofit institution, including a governmental unit. There is nothing in the bankruptcy court's records indicating whether (or not) the loan was to attend "an institution conducting an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training." Indeed, there is nothing in the bankruptcy court's records even indicating the school the loan was for. Thus, unlike in *Wilson*, no search of public records would have revealed to Experian that Navient had reported inaccurate credit information.

Moreover, soon after the bankruptcy proceedings had concluded, Mader signed a loan modification agreement, which was communicated to Experian and indicated that the loan was not discharged.   And, after modifying the payment terms, Mader, for the next four years, made payments on the loan, which were communicated to Experian.   Under these circumstances, it neither was negligent nor willful for Experian to continue to report the Navient loan.

### E.   Experian's Conduct Was Not Willful

In written discovery, Experian asked Mader to identify all *facts* supporting his willful violation claim.   Mader responded as follows: "Plaintiff believes that Experian knows the law or should know the law, and is not following it."  (Vogt Decl., ¶ 8 and Ex. 5 [Interrogatory No. 15] (objections omitted).)  He never supplemented that response.  (*Id*.)  Mader is thus ***bound*** by it, and is foreclosed from presenting any contrary or additional evidence in opposition to this motion on the issue of willfulness.  *Shantou Real Lingerie Mfg. Co., Ltd. v. Native Grp. Intl., Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018) (collecting cases).  That response cannot establish a willfulness claim because it is based on Mader's "*belief*," rather than any ***facts***.

Moreover, "willfulness is a high standard, requiring knowing or reckless disregard of the FCRA's requirements." *Berry v. Schulman*, 807 F.3d 600, 605 (4th Cir. 2015 (citing *Safeco*, 551 U.S. at 57, 69).  A consumer reporting agency's conduct is reckless if it "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.  A defendant that violates the FCRA based on an erroneous, but objectively reasonable, reading of the statute does not act recklessly.  *Id*.  To determine whether a defendant's reading was objectively reasonable, courts consider the text of the Act, as well as "guidance from the courts of appeal or the Federal Trade Commission." *Id*. at 70. "The willfulness standard is

therefore not met where the defendant's interpretation 'could reasonably have found support in the courts.'" *Heyer*, 2019 WL 2869337, at *3 (quoting *Safeco*, 551 U.S. at 70 n.20). Here, numerous courts, including the Second Circuit, have held that student loans to attend non-Title IV schools are ***not*** discharged in bankruptcy if, for example, they conferred an "educational benefit," *see Desormes*, 569 Fed. App'x at 43, or if were made under a program that was funded, in part, by nonprofit institutions, including governmental units. *See O'Brien*, 419 F.3d at 106. Thus, there is overwhelming "support in the courts" for Experian's procedure of not collecting school code data and automatically deleting educational loans to attend non-Title IV schools post-bankruptcy.

Moreover, that there is a split in authority over whether a loan can constitute an "educational benefit" precludes a finding of willfulness. *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 761 (9th Cir. 2018). As the Ninth Circuit explained in *Shaw*, so long as a consumer reporting agency's procedure has the support of "at least one district court," there is no willful violation claim. *Id*. Here, the Second Circuit has affirmed a district court's finding of non-dischargeablity of a loan to attend a non-Title IV school based upon a finding that the loan conferred an "educational benefit" on the debtor. That alone precludes a willful violation claim. *Id*. Conversely, no court has ever held that a student loan that is non-dischargeable under Subsection A of Section 523(a)(8) is nonetheless discharged if the loan was taken out to attend a non-Title IV school. And, no court has held that an educational loan to attend a non-Title IV is automatically discharged in bankruptcy. Thus, there is ***no*** "support in the courts" for the procedure that Mader claims Experian should have adopted.

Nor, is there any ***evidence*** regarding Experian's ***mental state*** to violate the FCRA. *Monroe v. Guilford Cty. Dist. Court*, No. 15-cv-580, 2015 WL 4873002, at *1–2 (M.D.N.C. Aug. 13, 2015) (To prove willfulness, a plaintiff must demonstrate "***specific facts*** as to the defendant's mental

state.") (quoting *Braun v. Client Servs., Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014) (collecting cases) (emphasis added)); *Diaz v. Experian Info. Sols. Inc.*, No. 19-cv-20, 2019 WL 6340155 (D. Nev. June 21, 2019) (willfulness requires a showing of the defendant's "required *mens rea*"). Again, in response to Experian's interrogatories, Mader did not identify ***any*** facts of Experian's state of mind.  (*See* Vogt Decl., ¶ 8 and Ex. 5 [Interrogatory No. 15].)  Regardless, the evidence establishes that Experian's procedures conformed to industry custom and practice in reporting student loan debts.  The evidence also establishes that Experian was not aware of any facts that would have indicated that Mader's loan was discharged.  Quite the contrary.  All of the information that Experian possessed demonstrated that the loan was not discharged.  After all, Mader, post-bankruptcy, modified the terms of the loan, and for the next four years, continued to make payments on the loan—all of which were communicated to Experian.

Experian is thus entitled to summary judgment on Mader's willful violation claims.

### F.     Mader Did Not Suffer Actual Damages

A claim for a negligent violation of the FCRA requires proof of actual damages.  *Braun*, 14 F. Supp. 3d at 397.  Mader did not produce *any* evidence of actual damages.  (Vogt Decl., ¶ 6 and Ex. 5 [Interrogatory No. 21] (identifying no actual damages in response to an interrogatory expressly asking him to state all of his actual damages).)  Conversely, Experian has presented uncontroverted evidence that the presence of the Navient loan ***improved*** Mader's credit. (Turner Decl., Ex. 1 at ¶ 50 [explaining the multiple reasons why Mader did not suffer any actual damages].)  Because there is no evidence that Mader suffered any actual damages, his negligence claims fail.  *Braun*, 14 F. Supp. 3d at 397.

### CONCLUSION

In sum, when the undisputed facts are measured against controlling law, it is clear that Mader's case against Experian has no merit, which entitles Experian to summary judgment.

Dated: February 27, 2020                    Respectfully submitted,


                                            /s/ *Kerianne Tobitsch*
                                            _____
                                            Kerianne Tobitsch
                                            JONES DAY
                                            250 Vesey Street
                                            New York, NY 10281
                                            Telephone:  (212) 326-8321
                                            Email: ktobitsch@jonesday.com


                                            *Attorneys for Defendant Experian Information*
                                            *Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kerianne Tobitsch, certify that on February 27, 2020, I caused the foregoing to be filed with the Clerk of the Court and served upon all counsel of record via the CM/ECF system.


*/s/ Kerianne Tobitsch*
Kerianne Tobitsch

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*